THE PEOPLE, ex rel. NEIL GILMOUR, Superintendent, etc., Respondent, *v.* FREDERICK HYDE et al., Appellants.

The superintendent of public instruction has no power to remove the principal of a normal school established under the act of 1866 (Chap. 466, Laws of 1866), without the concurrence of the local board.

The provision of said act (§ 4) declaring that the " employment " of teachers in said schools shall be subject to the approval of the superintendent, refers to the act of hiring. When the approval is once given, the contract of employment is complete, and the teacher can only be discharged by

the authority in whom the power to employ is vested, *i. e.*, by the concurrent act of the local board and the superintendent.

It is not within the power of the superintendent, by annexing conditions to his approval, to change the law regulating the discharge of teachers of these schools.

The local board of a normal school employed one H. as principal, which employment was approved by the superintendent "to continue in force during the pleasure of the board and the superintendent;" thereafter the superintendent withdrew his approval and directed the local board to recommend another principal, and upon its declining so to do, made an appointment himself which the board refused to recognize. In proceedings by *mandamus* to compel such recognition, *held*, that the superintendent had no authority to attach to his approval the qualification stated; that, notwithstanding the action of the superintendent, H. remained principal, and the refusal of the board to make a new appointment was not an omission "to discharge its duties" within the meaning of the amendatory act of 1869 (Chap. 18, Laws of 1869), and so did not authorize the superintendent to discharge such duties.

(Argued March 23, 1882 ; decided April 18, 1882.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made September 20, 1881, which affirmed an order of Special Term awarding a peremptory writ of *mandamus*, commanding the defendants, who constituted the local board of the State Normal School at Cortland, "to no longer procure or permit James H. Hoose to perform the duties of, or in anywise to act in said school as principal," and "to officially recognize James M. Cassety as the principal teacher."

The material facts are stated in the opinion.

*Samuel Hand* for appellants. This is not a case where *mandamus* will lie. (*People* v. *Stephens*, 5 Hill, 616, 629 ; *People* v. *Inspectors of Schools*, 44 How. 322; 1 R. S. 124, §§ 50, 56 ; 2 id. 582, § 32; Moses on Mandamus, § 49; *People* v. *Schegham*, 20 Barb. 302 ; *People* v. *Suprs. of Greene*, 12 id. 217; *People* v. *Lane*, 55 N. Y. 217 ; *People* v. *B'd of Education*, 2 Abb. [N. S.] 177 ; 12 Am. Dec. 28, *n.*) This position of principal teacher is an "office." (*In re Wood*, 2 Cow. 1, 30, *n; Henly* v. *Mayor*, 5 Bing. 91, 107 ; *People* v. *Com.*

*Council,* 77 N. Y. 503, 507; *People* v. *Nostrand,* 46 id. 375.)
The relator shows no beneficial interest in the *mandamus* and
has, therefore, no standing in court. (*Com. B'k* v. *Canal
Comm'rs,* 10 Wend. 25; *Rex* v. *College of Physicians,* 5 Burr.
2740; 2 Johns. Cas. [2d ed.] note.) The removal of the princi-
pal of the Cortland Normal School can only be upon concurrent
action of the board and the superintendent. (Potter's Dwarris,
129, 133, 140; *People* v. *Ins. Co.,* 15 Johns. 380; *Tonnele* v. *Hall,*
4 Comst. 140, 144; *Newell* v. *People,* 7 N. Y. 97; *Stevens* v.
*Duckworth,* Hard. 341, pl. 1; *King* v. *Poor Law Comm'rs of St.
Pancras,* 6 Ad. & Ell. 1; Laws of 1866, chap. 466, §§ 3, 4.) Any
general words in the act of 1866 must be held restrained and
defined with reference to the employment of teachers by the
section (§ 4) particularly providing for that subject. (*Elmen-
dorf* v. *Lansing,* 5 Cow. 468; *Smith* v. *People,* 46 N. Y. 330,
337; Potter's Dwarris, 128; Rule 17 of Vattel.) The ap-
proval of the relator, having been once placed upon the act of
hiring, cannot be withdrawn thereafter, at his will or caprice.
(*People* v. *Supvrs.,* 35 Barb. 408; *Bigler* v. *Mayer,* 5 Abb. [N.
S.] 51; *Jermand* v. *Wagoner,* 1 Hill, 279; *People* v. *Ames,* 19
How. 551; *Buffalo* v. *Mackay,* 15 Hun, 304; 15 U. S. Stat.
1867–69, 710; *Marbury* v. *Madison,* 1 Cranch, 139; *Ennis* v.
*Schroeder,* 76 N. Y. 163; *Wilder* v. *United States,* 5 Ct. of
Claims, 468, 475; *United States* v. *Speed,* 8 Wall. 83.) The uni-
form usage of the superintendents, including the present one, to
regard the appointing or nominating power as in the local board,
and claiming for themselves only the approving or confirming
power, is conclusive on the question of construction. (*People*
v. *Dayton,* 55 N. Y. 367; *Eaton* v. *Pickersgill,* id. 310; *Fort*
v. *Burch,* 6 Barb. 60; *Striker* v. *Kelly,* 7 Hill, 9; *United
States* v. *Dickson,* 15 Pet. 161.) The power of appointment
being expressly given to the board and the superintendent (they
appointing and he approving), in the absence of an express
power of removal given to anybody, that power must belong
to the appointing power, and hence cannot be exercised by
a portion of it. (*People* v. *Comptroller,* 20 Wend. 595; -

*People* v. *Fire Comm'rs*, 73 N. Y. 437, 441; *Ex parte Hennen*, 13 Peters, 230; *Nelson* v. *Coake*, 44 Mass. 352.)

*Leslie W. Russell,* attorney-general, for relator.   It was the design of the law to clothe the superintendent with superior power to that of the local board, and confer on him the right to decide, ·should disagreement come, when an employment of a teacher must terminate.   (Laws of 1866, chap. 466, §§ 1, 3; *People* v. *Mayor,* 5 Barb. 43; *Lambier* v. *Mayor,* 4 Sandf. 109; *People* v. *Comptroller,* 20 Wend. 595; Const. N. Y., art. 10, § 3; Laws of 1875, chap. 567, § 3; Laws of 1866, chap. 466, §§ 3, 4; Webster's Dictionary; Worcester's Dictionary; definitions, " appointment," " employment.") The terms of the appointment give the superintendent the right to withdraw at his pleasure and terminate the employment.   (1 Cruise' Dig., Real Prop. 244, 246; 7 Ad. & Ell. 957; 2 Blackst. Com. 145; *Raw* v. *Alderson,* 7 Taunt. 453; *Hunt* v. *Chamberlain,* 3 Halst. [N. J.] 336.)   The superintendent being empowered to determine the employment of the principal, it was the duty of the local board to recognize instead of repudiating his action.   (Laws of 1869, ‹ chap. 18.)   The hiring of the principal teacher was in no sense the appointment of an officer. (*Olmstead* v. *Mayor,* 10 J. & S. 481; *Union Co.* v. *Jones,* 21 Penn. St. 525; *Butler* v. *Regents,* 52 Wis. 124.) If it was, and the superintendent had the superior power, he could remove.   (*People* v. *Comm.,* 73 N. Y. 437; *Matter of Hennen,* 13 Pet. 230–259; *Nelson* v. *Coake,* 44 Mass. 352.)   Because the superintendent has seen fit to approve the teachers suggested by the board in past instances, it is no bar to his exercising his right to disapprove, or to withdraw approval, or to exercise his power of appointment, especially when the board refuses to suggest an appointment.   (15 Pet. 161.)   It was the duty of the superintendent, upon whom the responsibility for the due maintenance of the school rested, to see that the board acted as was their duty, and if his direction to them was powerless to effect this, he had the right to resort to the law. (*People* v. *Collins,* 19 Wend. 56; *People* v. *Halsey,* 37 N. Y.

334.)  The only appropriate remedy was *mandamus.*  (Laws of 1880, chap. 348 ; *People* v. *Medical Soc.*, 32 N. Y. 187 ; *Gilman* v. *Bassett,* 33 Conn. 298 ; *Green* v. *African Soc.*, 1 S. & R. 254 ; *Fuller* v. *Trustees,* 6 Conn. 532 ; *People* v. *Steele,* 1 Edm. 505 ; *Buck* v. *Lockport,* 43 How. Pr. 361 ; *McCullough* v. *Mayor,* 23 Wend. 458 ; *People* v. *Judges,* 20 id. 658 ; 5 Wait's Pr. 550.)

TRACY, J.  The question presented for the determination of the court in this case is, whether the superintendent of public instruction can, without the concurrence of the local boards, remove the principals of the normal schools established under the provisions of chapter 466, Laws of 1866.  By this act training schools for the education and disciplining of teachers for the common schools of this State, not exceeding four in number, were to be established in different counties of the State, to be located by a commission of State officers named in the act.

The third section of the act provides that local boards to be appointed by the superintendent of public instruction shall have "the immediate supervision and management of such schools, subject, however, to his (the superintendent's) general supervision, and to his direction in all things pertaining to the school."

It is further provided that "it shall be the duty of such board to make and establish, and from time to time alter and amend such rules and regulations for the government of such schools under their charge respectively as they shall deem best, which shall be subject to the approval of the superintendent of public instruction.  They shall also severally transmit through him, and subject to his approval, a report to the legislature on the first day of January in each year, showing the condition of the school under their charge during the year next preceding, and which report shall be in such form and contain such an account of their acts and doings as the superintendent shall direct."

By section 4 it is provided that " it shall be the duty of the

local board, subject to the approval of the superintendent of public instruction, to prescribe the course of study to be pursued in each of said schools."

By section 5 it is provided that " all applicants shall be subject, before admission, to a preliminary examination before such of the teachers of the school as shall be designated by the local board for that purpose. * * * That any pupil may be dismissed from the school by the local board for immoral or disorderly conduct, or neglect or inability to perform his duties.''

By the fourth section the superintendent of public instruction is to determine "what number of teachers shall be employed in each school and their wages, whose employment shall also be subject to his approval. · To order, in his discretion, that one or more of said schools shall be composed exclusively of males and one or more of females. To decide upon the number of pupils to be admitted to each of said schools and to prescribe the time and manner of their selection."

By the sixth section it is made the duty of the superintendent " to prepare suitable diplomas to be granted to the students. The local boards are to be appointed by the superintendent of public instruction, and to hold their offices until removed by the concurrent act of the chancellor of the University and the superintendent."

In 1869 (Chap. 18) an additional section was added to the act of 1866, providing that "during such time any local board shall omit to discharge its duties the said superintendent is authorized to discharge the duties of such local board, or any of its officers, and the act of the superintendent in the premises shall be as valid and binding as if done by a competent local board or its officers, or with their co-operation."

In 1877 the local board at Cortland employed Professor Hoose as principal at a salary of $2,500 per year, and said employment was approved by the superintendent, " to continue in force during the pleasure of the board and the superintendent." In July, 1880, the superintendent withdrew his approval of the employment of Professor Hoose, and directed the

board to recommend some competent principal in his place. The board, not recognizing the authority of the superintendent to remove Professor Hoose without its concurrence, declined to recommend a new principal. The superintendent, treating this refusal of the board as an omission to discharge its duty within the meaning of the eighth section of the act as amended in 1869, thereupon employed Professor Cassety as such principal. The board refusing to recognize Professor Cassety a *mandamus* was applied for to compel such recognition. If the superintendent had no power to remove Professor Hoose it is clear that the order granting the *mandamus* is erroneous and must be reversed. It is not pretended that any express power of removal is conferred on the superintendent by the statute. It is claimed on the part of the relator, and the court below held, that the word "employment," as used in the statute, does not mean "the act of hiring," but "the state of being employed." That such state could continue only so long as the superintendent approved said employment. And when he withdrew his approval the state of employment ceased, and the teacher was discharged. We are of opinion that this is not a correct construction of the statute. There can be no employment in the sense ascribed to this word by the court below without an act of hiring. No act of hiring can be complete without the approval of the superintendent. Obviously the act which the superintendent is required to approve must be that of some authority other than himself. For this court to hold that the legislature intended to require an officer to approve his own act in order to give it validity would be to convict the legislature of an absurdity. We are thus forced to the conclusion that the legislature intended that the contract of hiring should, in the first instance, be made by the local board having "the immediate supervision and management of the school," subject to the approval of the superintendent. The approval of the superintendent refers to an act to be done and not to a state of mind. When the approval required by the statute is once given the contract of employment is complete, and the teacher can

be discharged only by the authority in whom such power is vested.

It is also claimed that power to remove a teacher is conferred upon its superintendent by that clause of the act which provides that " the local board shall have the immediate supervision and management of the school, subject to the general supervision of its superintendent and to his direction in all things pertaining to its school." It is a well-settled rule that " in the construction of a statute every part of it must be viewed in connection with the whole so as to make all its parts harmonize if practicable, and give a sensible and intelligent effect to each." (Potter's Dwarris, 144; *People* v. *Utica Ins. Co.*, 15 Johns. 380; *Tonnele* v. *Hall*, 4 Comst. 140–144; *Newell* v. *The People*, 7 N. Y. 97; *King* v. *Poor Law Comm'rs of St. Pancras*, 6 A. & E. 1.)

It will be observed that in conferring power upon the local boards the legislature employs the words "supervision," "charge" and " management." The board is to have the " immediate supervision and management of the school." " They are to make a report showing the condition of the schools under their charge." " They are to make and establish rules and regulations for the government of such schools under their charge respectively." In defining the powers of the superintendent the words " charge " and " management " nowhere occur. He is nowhere given the charge or management of the school. The supervision and management of the board is immediate, the supervision and direction of the superintendent is general. The exclusive powers of the superintendent are all general in their character, and most of them relate to such as are essential to the organization of the school.

He is a member of the commission to locate the schools he appoints the local boards, he determines the number of teachers in each school and their wages, he determines the number of pupils to be admitted to each of said schools, to order that one or more of said schools shall be composed exclusively of males and one or more exclusively of females, and he also determines the time and manner of their selection.

The exercise of these powers vested exclusively in the superintendent must, in the first instance, precede the opening of the school, but the school, when once in operation, passes under the "immediate supervision and management" of the local board, subject only to the general supervision and direction of the superintendent. But under the authority of general supervision and direction he cannot assume the power of immediate management. It is certain that what the board may do, subject to his general supervision, he cannot do himself. The power to dismiss a pupil for immoral or disorderly conduct is vested exclusively in the board. It can hardly be contended that by force of the clause " subject to his general supervision and to his direction in all things pertaining to the school" he can himself dismiss a pupil for such cause. Nor can he prescribe the course of study or designate the teacher to conduct the preliminary examination. These are duties to be performed by the local board, subject only to his supervision and direction. We regard the act of 1869 as a legislative construction of the act of 1866 in accordance with the views here expressed. It assumes that the duties devolved upon the local board by the act of 1866 could, under that act, be performed only by such board, and where it omitted to perform them they could not lawfully be performed at all. For the purpose of remedying this defect in the law it was enacted that if "during such time any local board shall omit to discharge its duties, the said superintendent is authorized to discharge the duties of such local board or any of its officers." If the construction of the act of 1866 contended for by the relator be correct, the act of 1869, instead of conferring new and additional powers upon the superintendent, imposed a most important limitation upon the powers conferred upon him by the act of 1866.

If, by subjecting the local board " to his direction in all things pertaining to the school," the act of 1866 made him a co-ordinate authority with the board in respect to all duties devolved on it, so that whatever the board might do " subject to his general supervision " he could himself do equally with said board, such co-ordinate power was taken away by the act of 1869, for

it is clear that under the last-mentioned act he can perform no duty devolved on the board except where it omits to perform such duty. It is manifest that the act of 1869 was not passed to limit the powers of the superintendent, but to enable him in the contingency mentioned to discharge duties which, under the act of 1866, he was not competent to perform. That the legislature did not intend to subordinate the local boards wholly to the superintendent is further proved by the fact that while he is authorized to appoint the local boards, he cannot remove them without the concurrence of the chancellor of the University. The schools to be established under this act were to be widely separated and all distinct from the office of the superintendent. In the judgment of the legislature local supervision and management was essential to their success. To be effective it must have power, not only to supervise, recommend and report, but to act, to manage and control. In subjecting this immediate local management to the general supervision of a remote authority it was not intended to destroy or weaken it, but to give it the benefit of the superior intelligence of the superintendent, acquired by a broader and more diversified experience in school management. To give to the word " direction," as used in the statute, the force and effect contended for by the relator would reduce the local board to a mere nullity and place the schools under the immediate supervision of the superintendent. In the absence of any express statutory provision the right to remove the principal of one of these schools can be exercised only by the authority empowered to employ. (*People ex rel. Sims* v. *Fire Commissioners*, 73 N. Y. 437–441; *People ex rel. Lyndes* v. *Comptroller*, 20 Wend. 595; *Ex parte Hennen*, 13 Peters, 230; *Nelson* v. *Coake*, 44 Mass. 352.) A concurrent act of two separate authorities was, in this case, requisite to effect an employment, and it follows that such a concurrence was alike requisite to effect a removal. Nor can it be maintained that in this case the employment of Professor Hoose was, in law, conditional. It is true the superintendent attached to his approval a statement that the employment in question should continue during the

pleasure of the local board and the superintendent. We think it clear that he had no right to attach such a qualification. The exercise of such a power by him would substitute the caprice of either of the branches of the appointing power for the joint act of both, as the instrument of removal, and deprive the teacher of that certain tenure of employment which the law had provided in his behalf. The legislature intended that his employment and its continuance should rest on the conjoint action of an immediate and a remote authority, and not in the pleasure of either acting by itself. It is not within the power of the superintendent, by annexing conditions to his approval of the employment, to change the law regulating the discharge of the teachers of these schools. We are of opinion that Professor Hoose, notwithstanding the action of the superintendent was still the principal of the Normal School at Cortland, and in refusing to recognize Professor Cassety as such principal, the local board did not omit to discharge any duty imposed upon it by law.

It is undoubtedly true that divided counsels and distracted action would prove disastrous to the school; but the law has recognized this difficulty and provided against it. If the local board, upon whom the responsibility of immediate supervision is devolved, shall mismanage the school, the entire board or any member of it may be removed by the superintendent, with the concurrence of the chancellor of the University.

Such a construction of the statute preserves to the school the benefits of an independent local supervision, while it enables the superintendent to arrest a perverse or pernicious course of management before it has impaired the usefulness of the school. Such, we think, was the scheme of the law.

It follows that the orders of the General and Special Terms must be reversed and the application for a *mandamus* denied.

All concur, except RAPALLO, J., absent.

Ordered accordingly.