# Cases

# FOURTH DEPARTMENT

AT

## GENERAL TERM.

### November, 1891.

---

THE PEOPLE OF THE STATE OF NEW YORK EX
REL. ADOLPHE A. CAILLE, APPELLANT, v. HENRY C.
MERRICK, RESPONDENT.

*Office — title thereto — construction of the Binghamton city charter — vacancy in an
office — the employment of a person to perform its duties is not an occupancy by him
of the office — a statute not so construed as to create a co-ordinate power in a mayor
and in a common council.*

The charter of the city of Binghamton (Laws of 1888, chap. 214, tit. 2, § 2) pro-
vided that no person should be appointed to a city office unless he were at the time
a resident elector of said city; and in relation to city officers it further provided
(tit. 3, § 2) that the common council should meet annually on the first Tuesday
after the annual city election; that it might, at such first or any subsequent
meeting, appoint by ballot the city officers, among others a city engineer,
"whenever the terms of office of any of said officers are about to expire, and such
appointment is required;" but that if it failed to appoint any such officers within
three weeks from said first meeting, or failed to fill any vacancy within three
weeks after such vacancy should occur, it should become the duty of the mayor,
immediately upon the expiration of said three weeks, to appoint such officers
and fill such vacancies, which he must do in writing, under his hand and
seal, and file the appointment with the city clerk.

One Merrick was appointed, in 1889, city engineer. He resigned, and his resig-
nation, to take effect April 15, 1890, was accepted. One Caille, not then a
resident elector of the city, and, therefore, ineligible, was, pursuant to a resolu-
tion of the common council of March 31, 1890, employed, as of April 1, 1890,
by contract, "as surveyor and engineer."

On August 13, 1890, the mayor appointed Caille city engineer, but this appointment, not being under seal, was defective.

On August 29, 1890, the common council, by resolution, appointed Merrick to the same office.

On September 22, 1890, the mayor again appointed Caille to the office by an appointment which complied with the charter, and Caille duly qualified.

Merrick having refused to surrender the office an action was brought by Caille to determine the title thereto.

*Held*, that a vacancy began to exist in said office when, on the 15th day of April, 1890, the resignation of Merrick, accepted by the common council, took effect.

That the contract subsequently made by it with Caille was an employment, and was not an occupancy of the office preventing or affecting the vacancy then existing.

That, under said charter, the common council had not power, on August 29, 1890, to appoint Merrick to said office, more than three weeks having expired since said vacancy occurred.

That the power so to do thereupon vested in the mayor, and that his appointment of Caille to said office on September 22, 1890, was valid and gave Caille title thereto.

That the phrase in said charter giving to the common council power to appoint a city engineer at its first, or "any subsequent meeting," must be construed, as regards the power to fill a vacancy in that office, to mean any subsequent meeting held within three weeks from the time when the vacancy occurred.

That where there is doubt as to the construction of a statute it should be so construed, if possible, as not to create a co-ordinate power in a mayor and in a common council to appoint to the same office, such a construction necessarily involving a conflict of authority.

APPEAL by the plaintiff, the People of the State of New York, on the relation of Adolphe A. Caille, from a judgment, in favor of the defendant, dismissing the plaintiff's complaint, entered in the Broome county clerk's office on March 22, 1891; and also from an order, entered in the clerk's office of Broome county on the 29th day of November, 1890, denying a motion for a new trial upon the minutes of the court, after a trial at the Broome Circuit before the court and a jury, at which the plaintiff's complaint was dismissed.

*A D. Wales*, for the appellant.

*E. O'Connor*, for the respondent.

MARTIN, J. :

The sole purpose and object of this action was to determine the title to the office of city engineer of the city of Binghamton, N. Y. The right to that office was claimed both by the relator and the

respondent, the former claimed title to the office by virtue of an appointment made by the mayor of the city, the latter under an appointment made by its common council.

The common council, at its annual meeting, held on the first Tuesday after the annual city election in the year 1889, duly appointed the respondent as city engineer for the term of two years. In the latter part of March, 1890, the respondent resigned the office, his resignation to take effect on the fifteenth day of the following April. His resignation was duly and properly accepted by a majority vote of the common council, and filed with the city clerk. From that time he ceased to perform the duties of the office until the twenty-ninth of August of that year. Soon after the resignation of the respondent and its acceptance, all the members of the common council belonging to the then dominant party and the mayor, who was a member of the same party, held a caucus, at which the relator was present. The caucus determined that the relator should be appointed by the council, city engineer, to fill, for the unexpired term, the vacancy caused by the resignation of the respondent. It was, however, subsequently discovered that the relator was ineligible to the office for the reason that he was not a resident elector of the city, it being provided by the charter that no person should be elected or appointed to any city office unless he should be at the time a resident elector of said city. (Laws of 1888, chap. 214, tit. 2, § 2.) The caucus then determined that the relator should be employed to perform the duties of city engineer until such time as he should become qualified to hold the office by becoming a resident elector, when it was understood that he was to be appointed. In pursuance of this determination the common council, at a meeting held March 31, 1890, passed the following resolution :

"*Resolved*, That the mayor and city clerk be, and they are hereby, authorized and directed to enter into a contract with A. A. Caille for his services as surveyor and engineer at a salary of one hundred and twenty-five dollars per month, to date from April 1st, 1890."

Under this resolution the relator was employed, and continued to do the work usually performed by the city engineer, until about August 29, 1890, when the common council attempted to appoint the respondent to fill the vacancy occasioned by his previous resignation.

During the time the relator discharged the duties of such office he was treated by the mayor and common council as though duly and properly appointed thereto.  Shortly after his employment numerous complaints were made as to errors committed by him in establishing grades and curb lines of streets, which tended to show either that he did not possess sufficient capacity to properly discharge the duties of the office, or that he was negligent in the performance of such duties.  The evidence disclosed that his errors were so numerous and glaring that the board of street commissioners called the attention of the common council to the inefficiency of the relator and his work; and it also tended to show that he had little, if any, experience in performing the kind of work required of a city engineer.

After the complaint of the board of street commissioners had been received, and the Common Council had become fully aware of the many complaints as to the errors and inefficiency of the relator, and on the 29th day of August, 1890, it held a meeting at which it sought to appoint the respondent as city engineer.  At that meeting, when it had reached the order of business designated as "Miscellaneous Business," one of the aldermen moved that the council proceed to ballot for a city engineer to fill the unexpired term caused by the resignation of the respondent.  Thereupon the president of the board of aldermen took a paper from his pocket and threw it on the desk of the city clerk, which paper was as follows:

"BINGHAMTON, N. Y., *August* 13, 1890.

"*To the Honorable the Common Council :*

"GENTLEMEN.— By the power given me by the charter, I hereby appoint A. A. Caille, city engineer.

"F. H. STEPHENS,

"*Mayor.*"

The president of the board then refused to put to vote the motion to proceed to ballot for a city engineer, and an appeal was taken from such ruling, which the president also refused to entertain, whereupon the clerk was ordered to put the motion on the appeal, and it was sustained by a vote of eleven to one.  The president was then requested to put the question on the original motion, which he did not do, and the clerk being ordered to do so called the roll and

the motion was carried, ten voting in favor of the motion and three against it. The clerk was then requested to appoint tellers, and the council proceeded to ballot for a city engineer, the respondent receiving nine of the twelve votes of the aldermen present. The following resolution was then adopted:

"*Resolved*, That the services of A. A. Caille be dispensed with at the close of the present month."

Subsequently, and on the 22d of September, 1890, the mayor made, executed and filed with the city clerk the following appointment:

"STATE OF NEW YORK,
COUNTY OF BROOME, CITY OF BINGHAMTON, } *ss.:*

"A vacancy having existed in the office of city engineer, and the common council having failed to fill said vacancy within three weeks after the same occurred; by virtue of the power vested in me as mayor of said city, I hereby appoint Adolphe A. Caille of Binghamton, N. Y., city engineer to fill said vacancy.

"Witness my hand and seal this 22d day of September, [L. S.]    1890.

"FRANK H. STEPHENS,
*"Mayor of the City of Binghamton."*

It was indorsed as follows: "Appointment of Adolphe A. Caille, as city engineer, filed September 22, 1890. W. J. Flannigan, City Clerk."

After this appointment was made and filed, the relator subscribed and filed his oath of office as required by statute, and duly qualified as such officer. He then demanded of the respondent the possession of said office, which was refused.

On the trial the court dismissed the complaint on the ground that, by reason of the employment of the relator, no vacancy existed in the office until the time of the appointment of the respondent, and, therefore, the common council had the authority to make such appointment, as the vacancy had not then existed for the period of more than three weeks.

It is true the evidence showed quite conclusively that there was an understanding between the mayor and a majority of the common council that no city engineer was to be appointed, either by the council or the mayor, until the relator should have resided in the

city for the period of four months, and thus become qualified to hold the office, and that he was to be employed, in the meantime, to discharge the duties of such office, and was to receive an amount equal to the salary as a compensation for his services. It is also true that he was, in many respects, treated, both by the mayor and council, as though he were, in fact, such officer. If, therefore, the common council, or the council and mayor together, had the power to make such contract, and it resulted in preventing the occurrence of a vacancy in that office while the employment under it continued, it would seem to follow that the vacancy first arose when the contract was terminated. But we are unable to discover any principle upon which it can be held that the employment of a person by contract to perform the duties of an office which he was disqualified from holding in any manner prevented the office from becoming vacant. The very fact that such disqualification existed rendered it impossible to prevent the occurrence of a vacancy. A public office is never conferred by contract, but finds its source and limitation in some act or expression of the governmental power. When, therefore, the authority in question was conferred by contract, it must be regarded as an employment only, and not as the occupancy of a public office. (Mechem on Public Officers, § 5.) While municipal corporations may make authorized contracts, they cannot make contracts or pass by-laws which shall cede away, control or embarrass their legislative or governmental powers, or which disable them from performing their public duties. (1 Dillon's Municipal Corp. [4th ed.], § 97.) We think the employment of the relator did not prevent the office from becoming vacant after the time when the respondent's resignation took effect, and that the vacancy occurred on April 15, 1890.

Moreover, it was clearly and positively alleged in the complaint, and not denied by the answer, that a vacancy had existed in such office for more than three weeks before August 29, 1890. The respondent also alleged in his answer that he ceased to be such engineer on April 15, 1890; that the office remained vacant and unfilled until August 29, 1890, and that it had remained vacant from the time of respondent's resignation until his election to said office on August 29, 1890. The same fact was also admitted on

the trial. Under these circumstances, it is not apparent to us how it can be held that the office in question had not remained vacant for more than three weeks prior to the 29th of August, 1890.

Again, if the relator's employment was, in effect, a filling of such office so that no vacancy existed until such employment was terminated, the council had no authority to appoint the respondent, as they could only appoint when a vacancy existed. Thus we are led to the conclusion that the judgment in this case cannot be upheld on the ground that a vacancy in such office had not existed for more than three weeks before the action of the common council by which they sought to appoint the respondent.

It may be observed, in passing, that the attempted appointment of the relator made by the mayor, dated August 13, 1890, and which was presented to the city clerk on the twenty-ninth of that month, was insufficient, as it was not in conformity with the statute which required that such appointment should be in writing under the hand and seal of the mayor and be filed with the city clerk. (Laws of 1888, chap. 214, tit. 3, § 2.) That appointment was neither under his seal nor filed with the city clerk.

The next, and practically the only, remaining question that need be considered is, whether the common council had, at the time it attempted to exercise it, power to appoint a city engineer. If it had not, then its attempted appointment of the respondent was void, irrespective of any question as to the regularity of its proceedings. This question is dependent for its solution upon the construction to be given to the provisions of the charter of the city of Binghamton relating to that subject. The portion of the charter which relates to the office of city engineer provides that the common council shall meet annually on the first Tuesday after the annual city election ; that, at such annual meeting, they shall choose a president of the board of aldermen ; and "the common council may also, at such first or any subsequent meeting, appoint by ballot one city clerk, one recorder, one treasurer, *one city engineer*, one corporation counsel, one sealer of weights and measures, one sexton, and one janitor of the city buildings, whenever the terms of office of any of said officers are about to expire, and· such appointment is required, but if the common council fail to appoint any such officers within three weeks from said first meeting, or fail to fill any vacancy which

may occur in any elective or appointed office, which it is authorized to fill by the provisions of this act, within three weeks after such vacancy shall occur, it shall become the duty of the mayor, immediately upon the expiration of said three weeks, to appoint to such offices, and to fill such vacancies, which he shall do in writing under his hand and seal, and file with the city clerk, who shall thereupon notify the person or persons so appointed, the same as if such appointment had been made by the common council." (§ 2 of tit. 3 of chap. 214, Laws of 1888.) The charter also provides: "The city engineer shall hold his office for two years. He shall be paid an annual salary of not less than twelve hundred and not to exceed fifteen hundred dollars, to be paid as the common council may determine. He shall perform such duties with regard to surveying, engineering and other similar work as the council may prescribe." (§ 22 of tit. 4.)

We find no express provision in the charter which provides for filling any vacancy that may occur in the office of city engineer. If, however, in the absence of such provision it is to be assumed, as we think it should, that the body or officer having the power to make such appointment has the same power when there is a vacancy occasioned by resignation, as when it is caused by the expiration of the term of office, and is to be exercised in the same manner, then it follows that the provisions of the charter must still control in determining the power of the common council.

It will be observed that the section relating to the appointment of such officer provides that the common council may, at its first annual meeting, or at any subsequent meeting, appoint a city engineer; but it then declares that, if the council fail to make such appointment within three weeks, it shall become the duty of the mayor, immediately upon the expiration of that time, to make such appointment. The respondent contends that the provision, that such appointment may be made at any meeting subsequent to the first annual meeting, is evidence of an intention on the part of the legislature that it may be made by the council at any time while such vacancy exists, although more than three weeks may have elapsed. If that provision stood alone, the construction contended for would doubtless be correct, but in construing a statute effect must be given, if possible, to all the language employed. (*People*

*ex rel. Freligh* v. *Matsell*, 94 N. Y., 179, 183; *People* v. *McGloin*, 91 id., 250.) Every part must be viewed in connection with the whole so as to make all its parts harmonize, if practicable, and give a sensible and intelligent effect to each. (*People ex rel. Gilmour* v. *Hyde*, 89 N. Y., 18, and cases cited in opinion.) Therefore, in determining the effect to be given to the provision that the appointment may be made at the first annual meeting of the common council, or at any subsequent meeting, we should consider the further provision that unless the common council shall make such appointment within three weeks, it shall become the duty of the mayor to appoint, and construe these provisions together. When we thus read this statute, it becomes quite manifest that the term, "or any subsequent meeting," should be construed as only including a subsequent meeting held by the council within three weeks after a vacancy has occurred, and while it had the express power to make such appointment.

That the council had the absolute power to appoint a city engineer at any time within three weeks after a vacancy occurred is obvious. But the power conferred was required by the statute to be exercised in a definite manner and within a limited time. If it was not exercised within that time, it then became the absolute and immediate duty of the mayor to make such appointment. This provision shows quite clearly that the designation of the time within which the council may appoint was intended as a limitation of its power. The power conferred upon the common council was absolute, except as to the time and manner of executing it. In that respect it was limited and conditional, and could be lawfully exercised only within the limits prescribed. If it was not thus exercised, it then vested in the mayor and was to be exercised by him alone. "The provisions of the charter as to time and mode of election, the appointment, qualifications and duration of the terms of officers, must be strictly observed." (1 Dillon on Municipal Corp. [4th ed.], § 207.) It could be exercised only at the time, in the manner and to the extent prescribed by law. (Mechem on Public Officers, § 124.) "The designation of certain times and agencies necessarily excludes the adoption of any others for the accomplishment of the objects provided for." (*People ex rel. Smith* v. *Schiellein*, 95 N. Y., 124, 128.) When we read the statute, according to the natural and most obvious import of the language employed, without resorting to a

subtle and forced construction for the purpose of limiting or extending its operation, we conclude that it was the intent of the statute that the common council should have the exclusive power to appoint a city engineer at any time during the period of three weeks after a vacancy in that office occurred, but that if, for any reason, the council did not exercise the power granted within that time, then the power to make such appointment passed to, and vested in, the mayor alone, and rested in him until such appointment was made.

We cannot think that it was the intent of the law-makers that the power should rest in the council for three weeks, and after that time that the common council and the mayor should have co-ordinate power to make such appointment. It is not, we think, reasonable to suppose that such was the intent. Whenever the language admits of two constructions, it is obvious that the more reasonable of the two should be adopted as that which the legislature intended. (Endlich on Interpretation of Statutes, § 258, and cases cited.)

The propriety of thus construing this statute becomes more apparent when we consider the liability of a conflict between the mayor and council, if such co-ordinate power was held to exist, and the inconvenience, uncertainty and mischief that might follow. After the expiration of three weeks, if the mayor refused to discharge his duty by appointing an engineer, he could be compelled to do so. Could the council also be compelled to make such appointment? If the power of the council continued, as it affected third persons and the public interest, the statute would be regarded as mandatory, and the duty to make such appointment would also continue, and the council could be compelled to appoint. Under such a construction there might be two actions at the same time, one to compel the mayor to appoint, the other to enforce an appointment by the council. A construction which might produce such a condition of things should not, we think, prevail. This statute should not be construed so as to work such mischief, unless required by words of the most express and unequivocal import. (*People* v. *Mallory,* 2 T. & C., 76, 81; *People* v. *Lambier,* 5 Den., 9.) If the statute is construed as vesting the power of appointment in the council for three weeks, and after that time in the mayor alone until made, it becomes certain and reasonable, and the mischief which would arise from the opposite construction would be avoided.

Again, the duty imposed upon the mayor was an immediate one, and the manifest intent of the statute was that it should be discharged at once by filling such vacancy immediately upon the expiration of the three weeks within which the council could appoint, and not that it should remain vacant after that time, with co-ordinate power in the mayor and council to appoint. Hence we are of the opinion that as the office had been vacant more than three weeks at the time the common council attempted to appoint the respondent, it had no power or authority to make such appointment, and it was, therefore, void; and that as the mayor alone had the power to make the appointment after a vacancy in the office had existed for three weeks, and he having exercised it in the manner provided by the charter in appointing the relator on September 22, 1890, his appointment was valid and entitled him to the possession of the office.

If correct in these views, it becomes unnecessary to examine the other questions presented by the appellant, as the judgment must be reversed for the reasons already stated.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.