(32 App. Div. 414.)

PEOPLE ex rel. PERCIVAL et al. v. CRAM et al.

(Supreme Court, Appellate Division, Second Department. July 23, 1898.)

MANDAMUS—RESTORATION TO OFFICE—PROCEDURE.
    Upon an application for a peremptory mandamus to reinstate as a dockmaster in the department of docks and ferries of the present city of New York, a person who was a dockmaster in the former city of Brooklyn, and who, prior to the consolidation of the cities, was assigned, under the terms of the "plan" for apportionment and assignment provided for by section 1536 of the "Greater New York Charter," to duty under the department of finance of the new city, and was subsequently removed, the formal plan, as signed and published, cannot be ignored while remaining

uncorrected, even though it appears by the affidavit of one of the officials who prepared it that the assignment in question was the result of a clerical error; but the error, if any, should first be established in a proceeding in which all the officers who prepared the plan should have an opportunity to be heard.

Appeal from special term.

Application by the people, on the relation of Thomas J. Percival and others, against J. Sergeant Cram and others, as commissioners of the department of docks and ferries of the city of New York. From an order granting a peremptory writ of mandamus directing defendants to reinstate and restore relators as dockmasters, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Almet F. Jenks, for appellants.
James M. Kerr, for respondents.

WILLARD BARTLETT, J. Before and at the time when the Greater New York charter went into effect, the relators were dockmasters in the city of Brooklyn, having received their appointments from the comptroller of that city, under the provisions of chapter 356 of the Laws of 1886. The comptroller was the head of the department of finance of the city of Brooklyn. Laws 1888, c. 583, tit. 4, § 1. The relators might naturally be regarded, therefore, as subordinates or employés in or under the department of finance. The present proceeding is based upon the proposition that they became dockmasters in the new city by the operation of section 1536 of the Greater New York charter. That section provided, among other things, that the mayor of the city of New York, the mayor of the city of Brooklyn, the mayor of Long Island City, the chairman of the board of supervisors of the county of Richmond, and the county judge of Queens county, should meet in the mayor's office in the city of New York on December 1, 1897, and as often thereafter during December as might be necessary, and prepare and adopt a detailed plan for the transfer to the several public departments, bureaus, and offices provided for by the charter of all the public property appertaining to the administration thereof. It contained a further provision in the following words:

"The said plan shall also provide for the apportionment between the several public departments, bureaus and offices, and the assignment to service in said public departments, bureaus and offices respectively, so far as practicable, of all the subordinates and employés in every branch of the public service in each of the several municipal and public corporations hereby consolidated, in such manner that each person shall be assigned, as nearly as may be, without prejudice or advantage to perform the same service and in the same part of the city, and to hold the same relative rank or position in the city constituted by this act, as he performed and held at the time said plan of apportionment and assignment is determined upon. Said plan shall be such as to receive the approval of the mayor of New York as to persons in the service of the city of New York, of the mayor of Brooklyn as to persons in the service of the city of Brooklyn, of the mayor of Long Island City as to persons in the service of Long Island City, of the chairman of the board of supervisors

of Richmond county as to persons in the service of the municipal and public corporations of Richmond county, and of the county judge of Queens county as to persons in the service of the towns of Newtown, Flushing, Jamaica and that part of the town of Hempstead by this act included within the city of New York. The said plan when determined upon shall be signed by said mayors and said chairman and said county judge, or a majority of them, and shall be published in the City Record for such length of time as they may direct. Said plan and the apportionment and assignment herein provided for shall take effect on the first day of January, eighteen hundred and ninety-eight, and on and after said date the persons named therein shall be deemed to hold and shall hold the respective positions to which they may be assigned in said plan, until removed as herein provided, and their assignment to service shall not be deemed or construed to be a new appointment or reappointment, but shall be deemed to be, and shall be, a continuation of the appointment and employment theretofore held by them."

The relators were subordinates or employés in a branch of the public service in Brooklyn. The plan to be prepared under section 1536 of the charter, therefore, should have provided for the assignment of each of them, as nearly as might be, to perform the same service, and in the same part of the city, and to hold the same relative rank or position in Greater New York as he performed and held at the time the plan was determined upon. The plan prescribed by section 1536 of the charter, however, as actually signed and published and carried into effect, provided for the transfer of the relators, not to the department of docks and ferries, into which they have sought and obtained reinstatement by means of the present proceeding, but to the department of finance of the new city. In other words, the published plan indicated that the officers by whom it was prepared, finding the relators in or under the department of finance of the city of Brooklyn, thought that the intent of the law would best be carried out by assigning them to duty in or under the department of finance of the consolidated municipality. There can be no doubt that the signed and published plan in this respect, assuming that it truly represented the actual determination of the officers authorized to prepare it, was on its face, and would have been in fact, a valid exercise of the power conferred upon those officers by section 1536. Indeed, probably we should have heard no criticism upon it for assigning the relators to the wrong department, unless they had subsequently been turned out of that department, and thus deprived of places in the public service.

It is asserted, however, that the plan, so far as it concerns these relators, does not represent what was really determined upon by the officers empowered to prepare it. This allegation is supported by the affidavit of Mr. Frederick W. Wurster, the last mayor of the city of Brooklyn, who deposes to a meeting of the mayors and other officers authorized by the provisions of section 1536 of the Greater New York charter, to prepare a plan for the transfer of subordinates and employés to the appropriate departments in the new city, and who declares that at said meeting it was directed by said assembled officers "that the bureau of docks of the said late city of Brooklyn, together with all the dockmasters and employés

of said bureau of docks, be transferred to the department of docks and ferries of the city of New York." In the same affidavit it is further stated "that the clerical duty of making said transfer was thereupon duly delegated to Alfred E. Mudge, an assistant corporation counsel in and for the said late city of Brooklyn, and that he was directed to proceed to make said transfer, together with other transfers, in accordance with the requirements of said charter and said section 1536 thereof; that thereafter, when the schedule of said assignment and transfer had been completed, and the same was presented to him, deponent signed it in a perfunctory manner, without a critical examination thereof, assuming that the transfers had all been duly made as theretofore directed." Although this statement is not very clear, we suppose it means that the plan which was signed by the officers authorized to prepare it under section 1536 did not represent the plan which they had previously actually determined upon; the real determination having been to transfer the relators to the department of docks and ferries, while the plan which was signed and published transferred them to the department of finance. The court at special term received Mr. Wurster's affidavit as conclusive proof that such a mistake had been made, and held, in substance, that the plan, as signed and published, could be wholly disregarded, and that the relators were entitled to the same rights which would have belonged to them if the published plan had directed their transfer to the department of docks and ferries. We do not think that the formal plan of transfer, as signed and published, can be ignored so long as it remains uncorrected. An adjudication that the published plan does not conform to the plan which was in reality adopted cannot be made in a collateral proceeding; but the fact, if it be a fact, should be established in a proceeding in which the officers who prepared the plan, and all of them, should have an opportunity to be heard.

It may well be that the mistake, if one was made, can be corrected by a writ of mandamus, issued at the instance of the relators, commanding the officers aforesaid to amend the signed and published plan so as to conform to their actual determination; that the relators should be assigned, not to the department of finance of the new city, but to the department of docks and ferries therein. Such a use of the writ would be analogous to the power exercised by courts to compel inferior tribunals to correct their records so as to make them speak the truth, and show what judicial action really was taken. Taylor v. Gillette, 52 Conn. 216; State v. Whittet, 61 Wis. 351, 21 N. W. 245. If the facts were shown to warrant the correction, and the correction were made, the relators would be entitled to perform the same service, as nearly as might be, in the department of docks and ferries of Greater New York, as they performed before consolidation in the department of finance of the city of Brooklyn; and, if not allowed to do so, they might then enforce their right to recognition by a mandamus proceeding like the present. Until, however, the barrier presented by the published plan is removed, they cannot make out the necessary clear legal

right against the department of docks and ferries which is an essential requisite to relief by this writ.

The order below should be reversed.

Order reversed, with $10 costs and disbursements, and motion denied. All concur.