THE PEOPLE OF THE STATE OF NEW YORK ex rel. AUGUSTUS C. TATE,
    Appellant, v. WILLIAM DALTON, Commissioner of Water Supply
    of the City of New York, Respondent.

*A veteran a subordinate officer in Brooklyn — not removable at pleasure by the officer of
    the city of Greater New York under whose direction he is after the consolidation —
    his remedy to prevent removal.*

A veteran of the civil war, a subordinate public officer of the city of Brooklyn, not
    vested by statutory enactment with the performance of any independent duties,
    who continues to discharge his duties after the taking effect of the Greater
    New York charter in a subordinate position under the commissioner of water
    supply of the city of New York, is not subject to removal at the pleasure of
    the commissioner under section 1536 of the charter.

The remedy of such veteran, in case of his summary removal from his position
    by the commissioner of water supply, and the position being filled by another
    incumbent, is not by mandamus, but by an action of quo warranto for his
    restoration to his office, his remedy being determined by the fact that he is a
    public officer and not by the fact that he is not an independent officer.

APPEAL by the relator, Augustus C. Tate, from an order of the
Supreme Court, made at the Kings County Special Term and
entered in the office of the clerk of the county of Kings on the 7th
day of June, 1898, denying the relator's motion for a peremptory
writ of mandamus directed to William Dalton, commissioner of
water supply of the city of New York, commanding him to rein-
state the relator in the position of water registrar for the depart-
ment of water supply in the borough of Brooklyn.

*Joseph A. Burr*, for the appellant.

*Almet F. Jenks* [*William J. Carr* with him on the brief], for the
respondent.

HATCH, J.:

The relator was appointed to the office of water registrar of the
city of Brooklyn on the 1st day of February, 1894, by the
then commissioner of city works of such city. He immediately
entered upon and continued to discharge the duties of such office
until the cities of New York and Brooklyn were consolidated pursu-
ant to chapter 378 of the Laws of 1897. After consolidation the
relator continued to discharge the same duties that he had previ-
ously performed, in the office of the commissioner of water supply of

the city of New York, until the 8th day of April, 1898, when he was summarily removed from his office by the commissioner of water supply.

The provision of law existing at the time of the relator's appointment authorized the commissioner of city works to "appoint, during pleasure, * * * a water register, * * * and such and so many other subordinate officers and employes as the water service may require." (Chap. 583, Laws of 1888, tit. XV, § 1.) By section 2 of this title bureaus in the department of city works were established, "the chief officers, subordinates and employees of which shall be appointed and removed at pleasure by the commissioner of city works," as provided by section 2 of title 3 of the act. By the last section power was also conferred upon the commissioner to fix the salaries. By section 2 of title XV, subdivision 3, a bureau for the collection of revenue arising from the sale of water was established, "the chief officer of which shall be called the 'water registrar.'" The registrar was made subject to the provisions of the 5th section of title VII of the act, which made the conversion of public moneys a felony.

There does not appear to have been any statutory regulation prescribing the duties of the water registrar, but he seems to have been subject to the direction and control of the commissioner of city works. The revenue from the sale of water, while paid into the bureau of which the registrar was the chief officer, was nevertheless regarded as having been paid to, and collected by, the department of city works, and was required to be paid over daily. (Id. § 4, tit. XV.) There is no mention of any specific statutory duty devolved upon the registrar, and we can find nothing which invested him with any authority independent of the commissioner of city works. The provisions of the Greater New York charter (Laws of 1897, chap. 378) created a department called "Department of Water Supply," the head of which was called the "Commissioner of Water Supply." (Id. § 468.) By section 451 the main office of the department was required to be in the borough of Manhattan, unless the board of public improvements should otherwise determine. The commissioner of water supply was authorized to establish branch offices in such other boroughs as he might deem advisable, and by subdivision 3 of section 469, such

commissioner was given jurisdiction over the collection of the revenues from the sale or use of water from the public water supply. By section 1536 was provided a scheme for the transference and assignment to duty of the subordinates of the department of city works of the city of Brooklyn, and others, into the public service of the consolidated city. In pursuance of the authority contained in the Greater New York charter, the commissioner of water supply established a branch office in the borough of Brooklyn in which is a position in all respects similar to the position of water registrar as it formerly existed under the department of city works of the city of Brooklyn. We are, therefore, confronted with a case in all essential respects similar to the one presented in *People ex rel. Brymer* v. *Gray* (32 App. Div. 458). The views therein announced must control the determination in this case so far as the right of the relator rests upon authority to be transferred, and the existence of a similar position into which he might enter. Both rights are preserved to him by the provisions of the charter and the action of the authorities thereunder. So far as there is difference between this and the *Brymer* case, it cannot operate to change the principle of construction. All of the provisions of the charter sought to accomplish the same end; the difference is in the character of the office, and this works no change in result. The effect of section 1536 of the charter was the subject of examination in *People ex rel. Percival* v. *Cram* (32 App. Div. 414), and supports the conclusion at which we have arrived upon this question.

We may assume that the relator was a public officer. He was so named in the act which created the office that he filled, and we think he might have been indicted for malfeasance in office if probably guilty of any criminal offense therein. At the same time he was a subordinate officer, subject to the control of the commissioner of city works of the city of Brooklyn, and was not vested with the performance of any independent duties by statutory enactment. He was wholly subject to the direction and control of the commissioner of city works, and occupied in this respect a similar position to that occupied by the relator in the *Brymer* case. That he was a subordinate is recognized in the charter of the city of Brooklyn, to which we have already adverted. That the position continued to be a subordinate position to the commissioner of water supply is

established by the Greater New York charter; and the occupant of
it is recognized by the commissioner of water supply as a subordi-
nate, as appears from his affidavit filed in answer to this application.
The relator is, therefore, protected in his right to transfer, and in
his occupancy of the similar position under the Greater New York
charter, within our former decisions. Nothing in *People ex rel.
Earl* v. *England* (16 App. Div. 97) conflicts with this view. In
that case the Police Court clerk was held to be an independent
officer. This was clearly manifest by the character of his duties.
Not only did he perform duties by the direction of the police jus-
tice, but he performed duties in his absence under a command laid
upon him by the statute. The act required the clerk to collect and
pay into the city treasury all fees, fines and penalties, keep a docket
of the cases, and adjourn pending cases in the absence of the jus-
tice. These duties were quite independent of the justice, and were
not subject to his direction or control. The same is true also of the
officer in *Matter of Hardy* (17 Misc. Rep. 667). He was required
to take an oath of office, care for the public buildings, appoint an
assistant and provide for repair and cleaning. While subject to a
written direction of the mayor as to the repair, care and cleaning,
and to his approval in the appointment of an assistant, yet the
duties he performed were under the provision of the statute
and were independent in character. The case did not raise the
point of what constituted a subordinate officer under the pro-
visions of law we have considered. *People ex rel. Sears* v.
*Tobey* (8 App. Div. 468) presented the question of an independ-
ent officer, and may, therefore, be dismissed. That the relator
was a public officer does not, therefore, control the question, as
he was still a subordinate officer, of such a character that his
right to the position was preserved under the sections of the charter
we have considered.

Section 1536 of the charter reserved the right in the commis-
sioner of water supply to remove at pleasure. But we stand com-
mitted to the doctrine that officers protected by the veteran stat-
utes, so called, are excepted from such provision, and that the
relator is so protected. Where the officer or employee is not an
independent officer, and belongs to a general class to which the
acts apply, the exception applies, and the construction must be

that the power to remove at pleasure does not apply to such persons. We have noted some exceptions to this rule, and there may be others which may develop, based upon particular facts. Our recent discussions call for nothing further upon this point. (*People ex rel. Speight* v. *Coler*, 31 App. Div. 523; *People ex rel. Brymer* v. *Gray*, 32 id. 458.) Under our decision in the *Earl Case* (*supra*) and in the *Speight Case* (*supra*) we held that the local Veteran Act, applicable to the city of Brooklyn, remained unrepealed; therefore, the question whether the position held by the relator is confidential or not (upon which question we express no opinion) is of no consequence, as the act makes no exception in favor of such positions.

But while we reach the conclusion that the relator is entitled upon this record to the office, we also reach the conclusion that the remedy for his restoration is not by mandamus, but resort must be had to an action for that purpose. We do not regard the fact that the relator is not an independent officer as the test. The test is, is he a public officer; and upon that point we think the decision in *People ex rel. Wren* v. *Goetting* (133 N. Y. 569) is controlling. In *People ex rel. Drake* v. *Sutton* (88 Hun, 173) the relators were mere employees not holding a public office. The present office is filled by another incumbent, and he is entitled to be heard. The remedy is by quo warranto, where the title may be tried.

It follows that the order must be affirmed, with ten dollars costs and disbursements.

All concurred.

Order affirmed, with ten dollars costs and disbursements.