PEOPLE ex rel. TATE v. DALTON.

(Supreme Court, Appellate Division, Second Department.    October 25, 1898.)

1. GREATER NEW YORK CHARTER—WATER REGISTRAR—REMOVAL FROM OFFICE
—TRANSFERS—SUBORDINATES.

Relator was appointed water registrar of the city of Brooklyn by the commissioner of city works, prior to the passage of the Greater New York Charter. After consolidation, relator continued the same duties that he had previously performed, until April, 1898, when he was summarily removed from his office by the commissioner of water supplies. Laws 1888, c. 583, tit. 15, § 1, in force at the date of relator's appointment, authorized the commissioner of city works to appoint, during pleasure, a water registrar, and so many other "subordinate" officers and employés as the water service may require.    The act also conferred on the commissioner the power to fix the salaries.    There were no statutory regulations as to the registrar's duties, but he was subject to the direction and control of the commissioner of city works, and he paid over daily the revenues collected from the sale of water, to such commissioner. The Greater New York Charter (Laws 1897, c. 378) created the "department of water supply," with a "commissioner of water supply" as the chief officer, whose office was to be in the borough of Manhattan, with authority to establish branch offices in other boroughs, and with jurisdiction over the collection of revenues from the sale of water.    Section 1536 provided that all clerical and other "subordinate" forces in the public employ in any part of the city of New York, whose positions were not vacated by the act, should continue to hold their respective positions, under the new charter.    The commissioner of water supply established a branch office in the borough of Brooklyn, in which was a position in all respects similar to that of water registrar as it formerly existed in the city of Brooklyn.    *Held*, that relator was entitled to be transferred to the similar position created under the Greater New York Charter, since he is a "subordinate" officer.

2. SAME—VETERANS—CIVIL SERVICE LAWS.

Laws 1897, c. 378, § 1536 (Greater New York Charter), giving the right to the heads of certain departments to summarily remove subordinates from service, does not apply to subordinates who are veterans protected by the civil service laws.

3. MANDAMUS—QUO WARRANTO.

Mandamus will not lie to compel the commissioner of water supply of the city of New York to reinstate a water registrar whom he has removed, where such office has been subsequently filled, but the appropriate remedy in such case is by quo warranto.

Appeal from special term, Kings county.

Motion by the people, on the relation of Augustus C. Tate, against William Dalton, commissioner of water supply of the city of New York, for a peremptory writ of mandamus to forthwith reinstate relator as water registrar.   From an order at special term (53 N. Y. Supp. 108) denying the motion, relator appeals.    Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Joseph A. Burr, for appellant.

Almet F. Jenks (William J. Carr, on brief), for respondent.

HATCH, J.    The relator was appointed to the office of water registrar of the city of Brooklyn on the 1st day of February, 1894, by the then commissioner of city works of such city.    He immediately entered upon and continued to discharge the duties of such office until

the cities of New York and Brooklyn were consolidated, pursuant to chapter 378 of the Laws of 1897. After consolidation the relator continued to discharge the same duties that he had previously performed, in the office of the commissioner of water supply of the city of New York, until the 8th day of April, 1898, when he was summarily removed from his office by the commissioner of water supply.

The provision of law existing at the time of the relator's appointment authorized the commissioner of city works to "appoint, during pleasure, * * * a water registrar, * * * and such and so many other subordinate officers and employés as the water service may require." Laws 1888, c. 583, tit. 15, § 1. By section 2 of this title, bureaus in the department of city works were established, "the chief officers, subordinates and employees of which shall be appointed and removed at pleasure by the commissioner of city works," as provided by section 2 of title 3 of the act. By the last section, power was also conferred upon the commissioner to fix the salaries. By subdivision 3, § 2, tit. 15, a bureau for the collection of revenue arising from the sale of water was established, "the chief officer of which shall be called the 'water registrar.'" The registrar was made subject to the provisions of the fifth section of title 7 of the act, which made the conversion of public moneys a felony. There does not appear to have been any statutory regulation prescribing the duties of the water registrar, but he seems to have been subject to the direction and control of the commissioner of city works. The collection of the revenue from the sale of water, while paid into the bureau of which the registrar was the chief officer, was, nevertheless, regarded as having been paid to and collected by the department of city works, and was required to be paid over daily. Laws 1888, c. 583, tit. 15, § 4. There is no mention of any specific statutory duty devolved upon the registrar, and we can find nothing which invested him with any authority independent of the commissioner of city works. The provisions of the Greater New York Charter (Laws 1897, c. 378) created a department called "Department of Water Supply," the head of which was called the "Commissioner of Water Supply." Id. § 468. By section 451 the main office of the department was required to be in the borough of Manhattan, unless the board of public improvements should otherwise determine. The commissioner of water supply was authorized to establish branch offices in such other boroughs as he might deem advisable; and, by subdivision 3 of section 469, such commissioner was given jurisdiction over the collection of the revenues from the sale or use of water from the public water supply. By section 1536 was provided a scheme for the transference and assignment to duty of the subordinates of the department of city works of the city of Brooklyn and others, into the public service of the consolidated city.

In pursuance of the authority contained in the Greater New York charter, the commissioner of water supply established a branch office in the borough of Brooklyn, in which is a position in all respects similar to the position of water registrar as it formerly existed under the department of city works of the city of Brooklyn. We are therefore confronted with a case in all essential respects similar to the one presented in People v. Gray, 32 App. Div. 458, 53 N. Y. Supp. 274.

The views therein announced must control the determination in this case so far as the right of the relator rests upon authority to be transferred, and of the existence of a similar position into which he might enter. Both rights are preserved to him by the provisions of the charter, and the action of the authorities thereunder. So far as there is difference between this and the Gray Case, it cannot operate to change the principle of construction. All of the provisions of the charter sought to accomplish the same end. The difference is in the character of the office, and this works no change in result. The effect of section 1536 of the charter was the subject of examination in People v. Cram, 32 App. Div. 414, 53 N. Y. Supp. 110, and supports the conclusion at which we have arrived upon this question.

We may assume that the relator was a public officer. He was so named in the act which created the office that he filled, and we think he might have been indicted for malfeasance in office if probably guilty of any criminal offense therein. At the same time, he was a subordinate officer, subject to the control of the commissioner of city works of the city of Brooklyn, and was not vested with the performance of any independent duties by statutory enactment. He was wholly subject to the direction and control of the commissioner of city works, and occupied in this respect a similar position to that occupied by the relator in the Gray Case. That he was a subordinate is recognized in the charter of the city of Brooklyn, to which we have already adverted. That the position continued to be a subordinate position to the commissioner of water supply is established by the Greater New York Charter, and the occupant of it is recognized by the commissioner of water supply as a subordinate, as appears from his affidavit filed in answer to this application. The relator is therefore protected in his right to transfer, and in his occupancy of the similar position, under the Greater New York Charter, within our former decisions. Nothing in People v. England, 16 App. Div. 97, 45 N. Y. Supp. 12, conflicts with this view. In that case the police court clerk was held to be an independent officer. This was clearly manifest by the character of his duties. Not only did he perform duties by the direction of the police justice, but he performed duties in his absence under a command laid upon him by the statute. The act required the clerk to collect and pay into the city treasury all fees, fines, and penalties, keep a docket of the cases, and adjourn pending cases, in the absence of the justice. These duties were quite independent of the justice, and were not subject to his direction or control. The same is true also of the officer in Re Hardy, 17 Misc. Rep. 667, 41 N. Y. Supp. 469. He was required to take an oath of office, care for the public buildings, appoint an assistant, and provide for repair and cleaning. While subject to a written direction of the mayor as to the repair, care, and cleaning, and to his approval in the appointment of an assistant, yet the duties he performed were under the provision of the statute, and were independent in character. The case did not raise the point of what constituted a subordinate officer under the provisions of law we have considered. People v. Tobey, 8 App. Div. 468, 40 N. Y. Supp. 577, presented the question of an independent officer, and may therefore be dismissed. That the relator was a public officer does not

therefore control the question, as he was still a subordinate officer, of such a character that his right to the position was preserved under the sections of the charter we have considered. Section 1536 of the charter reserved the right in the commissioner of water supply to remove at pleasure. But we stand committed to the doctrine that officers protected by the "Veteran Statutes," so called, are excepted from such provision, and that the relator is so protected. Where the officer or employé is not an independent officer, and belongs to a general class to which the acts apply, the exception applies, and the construction must be that the power to remove at pleasure does not apply to such persons. We have noted some exceptions to this rule, and there may be others which may develop, based upon particular facts. Our recent discussions call for nothing further upon this point. People v. Coler, 31 App. Div. 523, 52 N. Y. Supp. 197; People v. Gray, 32 App. Div. 458, 53 N. Y. Supp. 274. Under our decision in the England Case, supra, and in the Coler Case, supra, we hold that the local veteran act applicable to the city of Brooklyn remains unrepealed. Therefore the question of whether the position held by the relator is confidential or not (upon which question we express no opinion) is of no consequence, as the act makes no exception in favor of such positions.

But, while we reach the conclusion that the relator is entitled upon this record to the office, we also reach the conclusion that the remedy for his restoration is not by mandamus, but resort must be had to an action for that purpose. We do not regard the fact that the relator is not an independent officer as the test. The test is, is he a public officer? and upon that point, we think, the decision in People v. Goetting, 133 N. Y. 569, 30 N. E. 968, is controlling. In People v. Sutton, 88 Hun, 173, 34 N. Y. Supp. 487, the relators were mere employés not holding a public office. The present office is filled by another incumbent, and he is entitled to be heard. The remedy is by quo warranto, where the title may be tried.

It follows that the order must be affirmed, with $10 costs and disbursements. All concur.