THE PEOPLE OF THE STATE OF NEW YORK ex rel. AUGUSTUS C. TATE, Appellant, v. WILLIAM DALTON, Commissioner of Water Supply of the City of New York, Respondent.

1. NEW YORK CITY — MUNICIPAL EMPLOYMENT — TRANSFER OF BROOK-LYN OFFICIAL UNDER GREATER NEW YORK CHARTER. The water registrar of the city of Brooklyn who, on January 1, 1898, by force of section 1536 of the Greater New York charter (L. 1897, ch. 378), was transferred into the department of water supply of the city of New York and assigned to duty as a clerk in the branch office of the department in the borough of Brooklyn, became from that date an employee of the city of New York, and his position of registrar of the city of Brooklyn then ceased and determined.

2. VETERANS — CITY OF BROOKLYN. The general Veterans' Act of 1888 (Ch. 119), providing that a veteran might be removed from municipal employment without cause shown or a hearing had, if he occupied a confidential relation to the appointing officer, was not intended to apply to the city of Brooklyn in derogation of the provision that no veteran in the employ of that city should be removed except for cause shown, after a hearing had, incorporated from a local act of 1887 (Ch. 708) into the charter of the city in 1888 (Ch. 583) after the adoption of the general act.

3. VETERANS — CITY OF BROOKLYN. It seems, that it was the legislative intent that the provisions of the local act as to the removal of veterans in the city of Brooklyn should be superseded by that of the general act of 1894 (Ch. 716) which amended the general act of 1884 (Ch. 312) by limiting the causes for removal of veterans from state or municipal employment, with the proviso that its provisions should not apply to persons holding a strictly confidential position.

4. LOCAL VETERANS' ACT ABROGATED BY CONSOLIDATION OF CITIES. The effect of the consolidation of the city of Brooklyn with the city of New York was to wipe out its old charter and substitute the Greater New York charter; and with the departure of the old charter there disappeared whatever remained of the local Veterans' Act, and in place of it there came into force the provisions of the statute applicable to the Greater New York.

5. CONFIDENTIAL POSITIONS. The provisions of the general Veterans' Acts which except from their operation persons holding confidential positions apply to and are in force in the Greater New York.

6. VETERAN'S REMEDY FOR WRONGFUL REMOVAL. The statutory provision (L. 1896, ch. 821), to the effect that a veteran improperly removed from a state or municipal position shall have "a remedy by mandamus for righting the wrong," makes mandamus the proper remedy in such a case in lieu of an action in the nature of quo warranto.

7. CHARACTERISTICS OF CONFIDENTIAL POSITION. The definition in section 8 of the Civil Service Act (L. 1884, ch. 410), of the positions excepted from its regulations on the score of confidential relation to the appointing officer, furnishes a proper guide in determining what is a "strictly confidential position" under the Veteran Acts.

8. POSITION OF CLERK IN BOROUGH BRANCH OFFICE OF CITY DEPARTMENT. While it may be that the clerk in the Brooklyn borough branch office of the New York city department of water supply, performing substantially the same duties as those formerly performed by the water registrar of the city of Brooklyn, having the handling of money in considerable sums, occupies a "strictly confidential position," within the meaning of the Veteran Acts, to the deputy commissioner for the borough, he does not occupy such a position to the commissioner of the department.

9. POWER OF APPOINTMENT OF CLERKS IN BRANCH OFFICE. By force of the Greater New York charter (§ 456), the power of appointment of clerks in a branch office of a department is vested in the deputy commissioner in charge of the branch and not in the commissioner of the department, although its exercise is subject to his approval.

10. POWER OF REMOVAL. Under the Greater New York charter (§ 1536), the commissioner at the head of a department, not having the power to appoint clerks in a branch office, has no power to remove them.

11. EXISTENCE OF DEPUTY COMMISSIONER. Where, in a proceeding for a mandamus to require the commissioner at the head of a New York city department to reinstate a borough branch office clerk removed by him, the record discloses the fact that the commissioner did establish the branch office in the borough, it may be assumed that there was a deputy commissioner in charge of the branch office.

12. COMMISSIONER NOT EMPOWERED TO REINSTATE — INEFFECTIVE MANDAMUS WILL NOT ISSUE. Where the commissioner of a New York city department has not the power to appoint or remove a particular clerk he has no power to reinstate him, and, therefore, a mandamus will not

issue on behalf of such clerk commanding the commissioner to do what he has not the power to perform, although his unauthorized act in removing the relator must be treated as null and void and the relator is still entitled to his position.

*People ex rel. Tate* v. *Dalton,* 34 App. Div. 6, affirmed.

(Argued January 11, 1899; decided February 28, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 29, 1898, affirming an ·order of the Special Term denying relator's motion for a peremptory writ of mandamus to compel the respondent to reinstate him in the office of water registrar for the department of water supply in the borough of Brooklyn.

The facts, so far as material, are stated in the opinion.

*Joseph A. Burr* for appellant. Mandamus is the proper remedy. (*People ex rel.* v. *Sutton,* 88 Hun, 173.) Under the Greater New York charter there is no such public office as that of water registrar, either in the main office of the commissioner of water supply, or in any of the branch offices. (Throop on Public Offices, §§ 3–5 ; *People ex rel.* v. *Sutton,* 88 Hun, 173 ; L. 1897, ch. 378, §§ 450, 455, 458, 469.) Even under the Brooklyn charter, if the position of water registrar was a public office at all, it was a subordinate as distinguished from an independent public office. (L. 1888, ch. 583, tit. 15, §§ 1, 2, 4 ; *People ex rel.* v. *Lane,* 55 N. Y. 217 ; *People ex rel.* v. *Goetting,* 133 N. Y. 569.) The relator being a veteran prior to January 1, 1898, was protected from removal during good behavior by the provisions of the statute specially applicable to the city of Brooklyn. (L. 1887, ch. 708 ; L. 1888, ch. 583, tit. 22, § 29 ; Endlich on Stat. Const. §§ 223, 228 ; *McKenna* v. *Edmundstone,* 91 N. Y. 231 ; *B. C. Assn.* v. *City of Buffalo,* 118 N. Y. 61 ; *People ex rel.* v. *England,* 16 App. Div. 102 ; L. 1888, ch. 119 ; L. 1890, ch. 17 ; L. 1892, ch. 577 ; L. 1894, ch. 716 ; L. 1896, ch. 821 ; L. 1898, ch. 184 ; *People ex rel.* v. *Palmer,* 152 N. Y. 217 ; *Chittenden* v. *Wurster,* 152 N. Y. 360 ; *People ex*

*rel.* v. *Coler,* 31 App. Div. 23; 157 N. Y. 676; *Til-linghast* v. *Merrill,* 151 N. Y. 135.) Inasmuch as under the provisions of the various acts above cited the relator, being a veteran, was entitled by law, prior to January 1, 1898, to serve during good behavior, and could not be removed, except for cause, by virtue of the provisions of the Greater New York charter and the assignment by the mayors of the respective municipalities consolidated into the city of New York, he was entitled to be retained by the corporation constituted by said act in a like position and under the same conditions as he had previously held and enjoyed. (L. 1897, ch. 378, §§ 127, 1536; *People ex rel.* v. *Coler,* 31 App. Div. 523; *People ex rel.* v. *Gray,* 32 App. Div. 458.) The statement in the opinion of the learned judge at Special Term, that the term of the relator prior to January 1, 1898, was during the pleasure of the commissioner of city works of the city of Brooklyn, and not during good behavior, is untenable. (L. 1888, ch. 583, tit. 15, §§ 1, 2.) The learned judge at Special Term was in error in his statement that the Veteran Acts do not protect officers. (*People ex rel.* v. *England,* 16 App. Div. 98.) If it be conceded that there is an officer known as deputy commissioner of water supply in the borough of Brooklyn, then the power to appoint and remove subordinates in that office is vested in the commissioner of water supply and the deputy commissioner of water supply jointly. (*People ex rel.* v. *Fire Comrs.,* 73 N. Y. 441; *People ex rel.* v. *Robb,* 126 N. Y. 180; *People ex rel.* v. *Friese,* 76 Cal. 633; 83 Cal. 456.) The power of removal is not in any case an unrestricted and unlimited one. (L. 1887, ch. 708; L. 1888, ch. 583, § 29; L. 1897, ch. 378, § 127.)

*John Whalen, Corporation Counsel* (*William J. Carr,* of counsel), for respondent. The water registrar of the city of Brooklyn was a public officer and not an employee. (*In re Hardy,* 17 Misc. Rep. 668; *People ex rel.* v. *Tobey,* 8 App. Div. 468.) The Veteran Acts give no protection to the veteran who holds or held a strictly confidential office. (*People ex rel.* v. *Palmer,* 152 N. Y. 220; *Chittenden* v.

*Wurster*, 152 N. Y. 345.) The relator, prior to January 1, 1898, held his office at the pleasure of the appointing power, and did not come within the scope of section 127 of the charter of the city of New York. (Const. N. Y. art. 10, § 3; *People ex rel.* v. *Morton*, 148 N. Y. 156; *People ex rel.* v. *Crooks*, 53 N. Y. 648; *People ex rel.* v. *McKinney*, 52 N. Y. 374; *People ex rel.* v. *Bull*, 46 N. Y. 57; *People ex rel.* v. *Hill*, 7 Cal. 97; *Smith* v. *Brown*, 59 Cal. 672; *People* v. *Freese*, 83 Cal. 456.) In any event mandamus was not the proper remedy for the relator. (*People ex rel.* v. *Goetting*, 133 N. Y. 569; *People ex rel.* v. *Brush*, 146 N. Y. 60; *Matter of Hardy*, 17 Misc. Rep. 667.) The commissioner of water supply had the power to remove every subordinate in his department who came into such service by virtue of the plan of transfer provided under section 1536 of the charter. (L. 1897, ch. 378, §§ 385, 452, 458, 1543.)

HAIGHT, J. The relator is an honorably discharged soldier of the Union army in the late war of the rebellion, and the respondent, since the second day of January, 1898, has been the commissioner of water supply of New York.

On the first day of February, 1894, the relator was appointed by the commissioner of city works of the city of Brooklyn to the position of water registrar in that city, at a salary of $4,000 per year. He continued in that position until the first day of January, 1898, at which time he was transferred into the department of water supply in the city of New York, and assigned to duty as a clerk in the branch office of that department located in the borough of Brooklyn. The duties which he was required to perform were substantially the same as those performed by him as water registrar under the charter of the city of Brooklyn. He continued in the latter position until the 7th day of April, 1898, at which time he was removed by the respondent, the commissioner of water supply. He then moved, upon an order to show cause, for a peremptory writ of mandamus to compel his reinstatement.

It becomes important, in the first place, to ascertain what

statutes are in force under which the rights of the relator are to be determined.   He was transferred into the department of water supply of the city of New York, pursuant to the provisions of section 1536 of chapter 378 of the Laws of 1897, known as the Greater New York charter.   Under the provisions of that section all of the subordinate employees in every branch of the public service in each of the municipal corporations consolidated by the provisions of the charter were, so far as practicable, required to be assigned as nearly as may be to perform the same service and in the same part of the city, and to hold the same relative rank or position in the greater city as the individual had performed and held previous to the consolidation of the municipal corporations.   The heads of every department, however, and every other officer given power by the provisions of the act to appoint and remove subordinates were given the power at any time after assuming office to remove any person assigned to service under him.   It is thus apparent that, under the provisions of this act, the relator, after the first day of January, 1898, became an employee of the city of New York, and that his position of registrar of the city of Brooklyn at that time ceased and determined.

Under chapter 708 of the Laws of 1887, "all persons holding position in the city of Brooklyn, or county of Kings, receiving salary from said city and county treasury, who shall be an honorably discharged soldier or sailor of the late war of the Rebellion, shall not be removed from such position, except for good cause shown, after a hearing had."   The provisions of this act were incorporated into the charter of the city of Brooklyn.   (Chap. 583 of the Laws of 1888.)   In the laws of the same year (Ch. 119), a similar statute was passed applying to all of the cities and counties of the state, but containing the provision that it should not apply to persons holding a confidential relation to the appointing officer.   This chapter was amended in 1890 (Ch. 67), and again in 1892 (Ch. 577) in particulars which it is not necessary now to consider.   The provisions of this act, though general and in terms applying to all of the cities of the state, are in conflict with the pro-

27

**210** People ex rel. Tate *v.* Dalton. [Feb.,

Opinion of the Court, per Haight, J. [Vol. 158.

visions of the local act applying to the city of Brooklyn in this, that under the local act no veteran could be removed without a cause shown after a hearing had, even though he occupied a confidential relation to the appointing officer; while under the general act, if the person occupied such a relation, he could be removed without cause shown or a hearing had, and the fact that the local act was incorporated into the charter of the city of Brooklyn after the adoption of the general act of 1888 (Ch. 119) indicated, as has been held below, a legislative intent that the provisions of the general act were not intended to apply to the city of Brooklyn. At the time of the adoption of these acts there were other statutes in force with reference to veterans, which it now becomes important to consider. By chapter 312 of the Laws of 1884, it was provided that, "in every public department and upon all public works of the state of New York, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment. Age, loss of limb or other physical impairment, which does not in fact incapacitate, shall not be deemed to disqualify them, provided they possess the other requisite qualifications." In 1887, chapter 464, this act was amended so as to apply to all the cities, towns and villages in the state. It will be observed that this act was adopted prior to chapter 708 of the Laws of 1887, and that it applied to the city of Brooklyn as well as the other cities of the state. It was not in conflict with the provisions of the later and the local act, for the reason that that pertained to the removal of veterans, and the provisions of this act had reference to the preferring of them for appointment. The provisions of this act were amended in 1894 (Ch. 716), in which the power of removal was limited to incompetency and conduct inconsistent with the position held by the employee or appointee, but the provisions of the act were not to apply to persons holding a strictly confidential position, and all laws or parts of laws inconsistent with the provisions of this law were repealed. This act was again amended in 1896 (Ch. 821), in which the power of removal was limited to incompetency

or misconduct shown after a hearing upon due notice upon the charge made, again repealing all acts or parts of acts inconsistent with the provisions of this act.

It will thus be seen that the amendment of the general act in 1894 places a limitation upon the power of removal to incompetency and conduct inconsistent with the position held. This we do not think is in conflict with the provisions of the general act of 1888 (Ch. 119) or of the local Brooklyn act. Those acts, it will be observed, limited removals to cause shown after hearing had, but do not specify what shall constitute cause. This act supplies that defect and specifies incompetency and conduct inconsistent with the position held. It does not, however, apply to persons holding a strictly confidential position.

It is not our purpose or desire to in any wise limit or impair the rule that a general act of the legislature will not be deemed to repeal a local act unless it be so expressly stated or the legislative intention so to do is apparent; but here we have a general act applying to the city of Brooklyn as well as to all of the cities of the state amended by limiting the power of removal of soldiers in the late war of the rebellion to causes specified, which, in substance, embrace all of the provisions included in the Brooklyn act and are in harmony with it, containing the provision that it shall not apply to a person holding a strictly confidential position.

These facts, taken in connection with the express provision of the act that " all acts or parts of acts inconsistent with the provisions of this act are hereby repealed," indicate to our mind a legislative intent that the provisions of the local act should be superseded by that of the general act covering the same subject. This, however, is not all. The provisions of the general act applied to the city of New York before the Greater New York charter went into force. Under the provisions of that charter the city of Brooklyn was consolidated with and became a part of the city of New York, and under section 1615 of the act, the corporation itself ceased to exist, and all of the officers forming a part of its local government

were abolished. We no longer have a city of Brooklyn, or officers or employees thereof. The effect of the consolidation was to wipe out its old charter and substitute in its place the charter of the Greater New York. With the departure of the old charter there disappeared whatever remained of the local Veterans' Act, and in place of it there came into force the provisions of the statute applicable to the Greater New York. By section 124 of the act, honorably discharged soldiers and sailors in the army and navy of the United States in the late civil war shall be entitled to preference in appointment and promotion from any list from which an appointment or promotion is to be made, without regard to their standing on such list. By section 127, all veterans, either of the army or navy, in the service of either of the municipal corporations consolidated by the provisions of the act, shall be retained in like positions and under the same conditions, by the greater city.

Chapter 119 of 1888 was again amended in 1898 (Ch. 184) after the Greater New York charter went into effect, retaining the provision with reference to confidential positions, and that act now applies to the Greater New York, even assuming that, prior to the last amendment, it did not apply to the city of Brooklyn. The Laws of 1884, as amended by chapter 716 of the Laws of 1894, and as amended by chapter 821 of the Laws of 1896, also apply and are in force in the Greater New York. Under these statutes, veterans in office at the time of the consolidation of the cities are entitled to be retained in like positions and under the same conditions. At the time the charter went into effect they could not be removed except for incompetency or misconduct shown after a hearing upon due notice upon charge made, unless the person removed was a private secretary or deputy of an official or department, or a person holding a strictly confidential position.

The motion for a mandamus in this case was opposed upon the ground that relator occupied a strictly confidential position to the respondent. The Appellate Division refused to consider this question, and held that the remedy of the relator was not by mandamus, but that he must resort to an action in

1899.]     People ex rel. Tate v. Dalton.     213

N. Y. Rep.]     Opinion of the Court, per HAIGHT, J.

the nature of a quo warranto (34 App. Div. 6), citing *People ex rel. Wren* v. *Goetting* (133 N. Y. 569). The decision in the *Wren* case was rendered in April, 1892. At that time no. remedy by mandamus had been given by any express provision of the veteran statute. In 1894 it was given inferentially, and in 1896 it was expressly provided that a veteran improperly removed should have "a remedy by mandamus for righting the wrong." This provision of the statute seems to be a complete answer to the position taken by the Appellate Division.

The question then arises as to whether the relator occupies a strictly confidential position. It may be that he does to the deputy commissioner of the borough of Brooklyn, but we think not to the respondent in these proceedings. The relator's position is one of trust and confidence and he has the handling of money in considerable sums. While these proceedings are not based upon the civil service statutes, those statutes furnish a guide, which we think may be safely followed in determining whether the relator's position is confidential. In that statute (L. 1884, ch. 410, § 8), it is provided that " Officers elected by the people and the subordinates of any such officer for whose errors or violation of duty such officer is financially. responsible, * * * and any subordinate officer who by virtue of his office has personal custody of public moneys or public securities, for the safe keeping of which the head of an office is under official bonds, shall not be subject to the regulations prescribed pursuant to this section." In other words, such subordinates were deemed to occupy confidential relations to the appointing officer and were not subject to the civil service regulations. But the record does not satisfy us that the commissioner is financially responsible for the acts of the relator. Ordinarily the head of a department is only responsible for the action of his subordinate when he has the power to appoint and remove. The commissioner has no power to appoint a person to fill the position occupied by the relator, or to remove an occupant therefrom. That power is given to another. He may "appoint such clerks and sub-

214 · People ex rel. Tate v. Dalton. [Feb.,

Opinion of the Court, per Haight, J. [Vol. 158.

ordinates as may, in his judgment, be necessary in his main office, and may fix and regulate their salaries, within the limits of the appropriation duly made therefor. A deputy commissioner in charge of a branch office of a department shall, subject to the approval of the head of his department, appoint such clerks and subordinates of his department, in and for his borough, as may in his judgment be necessary, and fix and regulate their salaries, within the limits of the appropriation duly made therefor." (Greater New York Charter, § 456.) The position occupied by the relator, as we have seen, was under the deputy commissioner of the branch office within the borough of Brooklyn, and his position can only be filled by an appointment from that officer, to whom the appointee is directly responsible. It is true that the appointment must be with the approval of the commissioner, but this does not invest him with the power to appoint or to make him responsible for the acts of the appointee. (*People ex rel. Gilmour* v. *Hyde*, 89 N. Y. 11.) Under section 1536 of the act " The head of every department, and every other officer by this act given power to appoint, remove and fix and regulate the salaries of his subordinates, appointees and employees shall have power, upon assuming office, or at any time thereafter, to remove any person assigned to service under him." The commissioner is the head of the department, but his power to remove under this provision is limited to the cases in which he is given the power to appoint, and if he is not given the power to appoint, he does not possess the power to remove. The above provision has reference to cases in which the statute interposes no other limitation upon the power of removal. In the case of veterans other limitations are imposed by section 127 of the act, and in removing them from their positions the officer must conform to the provisions of the statute to which we have called attention. Our conclusion is that the relator was not a confidential servant or appointee of the commissioner, and that he had no power to remove him.

The point is made that the record does not show that there was a deputy commissioner in charge of the Brooklyn office.

The statute requires that the main office of the department shall be located in the borough of Manhattan, and that branch offices *may* be located within such other boroughs as may be deemed advisable by the commissioner, who is authorized to appoint one or more deputy commissioners, one of whom shall be located at the main office of such department, and there may be a deputy in each borough in which is located a branch office. To the deputy commissioner in charge of the branch office is given the power to appoint such clerks and subordinates in his department as he may, in his judgment, deem necessary, with the approval of the commissioner. (The Greater New York Charter, §§ 451, 452, 456.) The record does disclose the fact that the commissioner of water supply did establish a branch office in the borough of Brooklyn, and that the duties and services of the relator were rendered and performed in that office. The commissioner, in establishing a branch office in the borough of Brooklyn, of necessity, must have placed it in charge of some officer. The officer designated by the. statute for the care of such an office is a deputy commissioner. We think we may assume, therefore, that such an officer was in charge of the office.

The *Speight Case* (157 N. Y. 676), as the record stands, differs from this case in a material point. In that case we held that it did not appear from the record that the position was strictly confidential within the meaning of the statute. Speight was the collector of fees of the Wallabout market. Under the charter the comptroller was required to establish in his department five bureaus, one of which was to be known as the bureau for the collection of the city revenue of markets, the chief officers of which were to be the collector and a superintendent of markets. Speight was the collector. He filled an office which was created by the statute, and under the ordinances of the city passed January 3d, 1898, was required to give a bond to the city for the faithful discharge of the duties of his office. He was not a mere clerk or subordinate of an officer, but was himself a chief officer, the head of a bureau. So far as we could gather from the record in that case it did

not appear that the comptroller was financially responsible for the action of Speight any more than the mayor would be financially responsible for the heads of departments which the charter requires him to fill by appointment.

The deputy commissioner of the borough of Brooklyn has not, so far as the record discloses, ever removed the relator from his position. The action of the commissioner, being unauthorized, must be treated as void and a nullity, and the relator still entitled to his position. But the commissioner, not having the power to appoint or to remove, has no power to reinstate, and for this reason a mandamus will not issue commanding him to do that which he has not the power to perform.

The order of the Appellate Division should be affirmed; but inasmuch as the questions herein considered are new and were not discussed below, we think the affirmance should be without costs.

All concur.

Order affirmed.