PEOPLE ex rel. EASTMOND v. OAKLEY, Commissioner of Water Supply, Gas, and Electricity, et al.

(Supreme Court, Appellate Division, Second Department. April 22, 1904.)

1. MUNICIPAL CORPORATIONS—OFFICERS—WATER REGISTRAR OF BROOKLYN—ABOLITION OF OFFICE.

Laws 1888, p. 1042, c. 583, tit. 15, § 2 (charter of the former city of Brooklyn), created a bureau for the collection of revenue arising from the sale and use of water, and provided that the chief officer should be called the "water registrar." The Charter of New York, § 1615, provides that all offices forming a part of the local government of the municipal and public corporations and parts thereof which were on the 1st of January, 1898, united and consolidated into the city of New York, are abolished as to all territory embraced within the limits of the city, except as otherwise provided. *Held*, that under this section and section 1536, relative to the retention of office by clerks in the public employ in territory consolidated, and section 1543, relative to. heads of departments and their control over subordinates, the office of water registrar of the city of Brooklyn was abolished.

2. SAME—"HEADS OF BUREAUS."

The Charter of 1897 of the city of New York, § 458, authorized the commissioner of the department of water supply to organize such bureaus as he might deem necessary, and directed that he locate a branch of each of the bureaus in the public hall of the borough of Brooklyn. Under this authority the commissioner organized the bureau of civil engineer, and the bureau for the collection of revenue from the sale and use of water, and ordered that the chief officer of the latter be known as "water registrar," and that a branch office of the latter be maintained in the borough of Brooklyn. *Held*, that the person in charge of the branch office of the bureau for the collection of revenue from the sale and use of water in the borough of Brooklyn was not the "head of a bureau," within

New York Charter, § 1543, providing that the heads of departments shall have power to remove certain officers, but that no head of a bureau shall be removed until he has been allowed an opportunity of making an explanation, etc.

Appeal from Special Term, Kings County.

Mandamus by the people, on the relation of John Edward Eastmond, against John T. Oakley and another, as commissioners of water supply, gas, and electricity, and another. From a judgment awarding an alternative writ, respondents appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

James D. Bell, for appellants.
Arnon L. Squiers, for respondent.

HOOKER, J. The defendant Oakley is commissioner of water supply, gas, and electricity of the city of New York, and Thomas F. Byrnes is deputy for the borough of Brooklyn. This is an appeal from an order made at Special Term, directing that an alternative writ of mandamus issue against them forthwith to restore and reinstate the relator as water registrar of the borough of Brooklyn, and to the position and performance of the duties and enjoyment of the emoluments and privileges of such office, or that they show cause to the contrary. The relator was appointed on the 9th day of January, 1903, water registrar for the borough of Brooklyn, in the department of water supply, gas, and electricity, his predecessor in office having died. On January 1, 1904, the appellant Oakley was duly appointed commissioner of the department, and the appellant Byrnes deputy commissioner for the borough of Brooklyn. Oakley removed the relator from his position, and appointed another to succeed him, who took physical possession of the office of the water registrar in the Municipal Building in the borough of Brooklyn, and ousted the relator therefrom. The relator was neither a veteran of the Civil War nor a veteran fireman, was not in the classified municipal civil service, had not been appointed from any civil service list, and has no protection under section 21 of chapter 370 of the laws of 1899, as amended by chapter 270 of the laws of 1902, and claims none. Section 1543 of the Charter of the city of New York (chapter 387 of the Laws of 1897, as amended by chapter 466 of the Laws of 1901) provides in part as follows:

"The heads of all departments and all borough presidents (except as otherwise especially provided) shall have power to appoint and remove all chiefs of bureaus (except the chamberlain), as also all clerks, officers, employés and subordinates in their respective departments, except as herein otherwise specially provided, without reference to the tenure of office of any existing appointee. But no regular clerk or head of a bureau, or person holding a position in the classified municipal civil service subject to competitive examination, shall be removed until he has been allowed an opportunity of making an explanation; and in every case of a removal, the true grounds thereof shall be forthwith entered upon the records of the department or board or borough president, and a copy filed with the municipal civil service."

Under the provisions of this section the relator claims that his removal, which was without the preferment of charges, and without the opportunity of making an explanation, was illegal and void; for he

asserts that the position he held was that of "head of a bureau" as those words are understood in that section. No claim is made that he was a "regular clerk," nor will the facts as they appear in the record warrant that appellation of the office he held. The relator's claim to have been the head of a bureau is based largely upon the language of chapter 583, p. 1042, of the Laws of 1888, § 2, tit. 15, the charter of the former city of Brooklyn, which created a "bureau for the collection of the revenue arising from the sale and use of water, the chief officer of which shall be called the 'water registrar.'" The relator shows that he was called the water registrar of the borough of Brooklyn in the department of water supply, gas, and electricity, and contends that the force of this act extends into the present organization and government of the city of New York to the extent that the relator before his removal was the head of the bureau. Section 1615 of the Charter of the city of New York, however, provides that all offices forming a part of the local government of the municipal and public corporations and parts thereof, including villages, towns, and school districts, but not including counties, which were on the 1st of January, 1898, united and consolidated into the present city of New York, were abolished as to all the territory embraced within the limits of the city of New York, except as in the charter otherwise expressly provided.

It was decided in People ex rel. Tate v. Dalton, 158 N. Y. 204, 52 N. E. 1119, that the water registrar of the city of Brooklyn, who was, by force of section 1536 of the Charter of the city of New York, transferred into the department of water supply in that city, became thenceforth an employé of the latter city, and his position of water registrar of the city of Brooklyn ceased and determined. We think it clear that under the decision in the Tate Case, and by virtue of the provisions of section 1543 of the charter, the office of water registrar was completely abolished on the 1st of January, 1898; so that, if the relator is to find protection under section 1643 of the charter on the ground that he was the head of the bureau, it must appear that he was the chief officer of a division of the department of water supply, gas, and electricity, known to the statute which authorized and created the department as a bureau. In other words, the bureau must have been established by law, or under its direct authority.

The organization of the fire department, provided for in the Charter of the city of New York in 1873 (chapter 335, p. 484, of the Laws of 1873), was discussed by the Court of Appeals in People ex rel. Emerick v. Board of Fire Commissioners, 86 N. Y. 149. That act provided for a board of three persons and for three bureaus, and it assigned to the board and to each bureau its peculiar duties. It was there held that the charter did not empower the board of fire commissioners to create another bureau than the ones designated by the act. Section 458 of the charter of 1897 authorized the commissioner of the department of water supply to organize such bureaus as he should from time to time deem necessary to the proper discharge of the duties of his department, and directed that he locate a branch of each of the bureaus so organized in the public hall or building of the borough of Brooklyn for the discharge of all the duties of the department devolving upon such bureau or bureaus, so far as such duties appertain to the borough of Brooklyn.

On the 8th day of February, 1898, William Dalton, then commissioner of water supply, pursuant to the authority conferred upon him by that section, established and organized two bureaus of the department of water supply, and only two, and evidenced his action by a written order to that effect, filed with the department, and now in the custody and control of the department of water supply, gas, and electricity. These two bureaus were, first, the bureau of civil engineer, and, second, the bureau for the collection of revenue derived from the sale and use of water in the city of New York, the chief officer of which, Commissioner Dalton ordered, should be known as "water registrar"; and the direction further provided that a branch office of the latter bureau be maintained in the Municipal Building in the borough of Brooklyn. This direction was so closely in accord with the provisions and requirements of section 458 of the charter of 1897 that it seems to be clear without argument that the Brooklyn office was, in the language of the section, a branch of the bureau so organized by him, and located, as the act required, in the public hall or building in the borough of Brooklyn. The head of the bureau was the chief officer thereof, and was known as the "water registrar." His subordinate for the branch of the bureau in Brooklyn held the position as water registrar for the borough of Brooklyn, and was not, therefore, the head of a bureau. In view of the statutory authority vested in the commissioner to establish such bureaus as he might see fit, and in view of the fact that he has established no more than two, and made the office at the head of which the relator was placed distinctly a branch of one of those bureaus, it cannot be said, in the absence of some further direction in the premises, that under the authority conferred upon the commissioner by section 458 of the charter of 1897 there has been by custom, usage, or in any other way established any other or further "bureau," as that term is understood in section 1543, the advantage of whose terms the relator seeks. It follows that the granting of a writ of mandamus in this case, either alternative or peremptory, is improper, and the order appealed from must therefore be reversed.

Order allowing alternative writ of mandamus reversed, with $10 costs and disbursements, and writ dismissed. All concur.