In the Matter of the Application of FRANK P. KENISON, Respondent, for a Peremptory Mandamus Order against HUGH WHITE, President of the Village of Scarsdale, WARREN CUNNINGHAM and Others, Constituting the Board of Trustees of the Village of Scarsdale, and Another, Appellants.

Second Department, April 29, 1927.

Villages — officers — chief of police — petitioner was appointed chief of police of village of Scarsdale after civil service examination — Village Law, § 188-a, applies — petitioner could not be removed except upon charges preferred and hearing had — removal was illegal and petitioner is reinstated.

This is a proceeding to compel the reinstatement of the relator as chief of police of the village of Scarsdale in Westchester county. Since Westchester county adjoins a city of the first class, section 188-a of the Village Law applies. Said section provides for the organization of a police department and that officers appointed shall continue in office unless suspended or dismissed upon charges preferred and hearing had. The petitioner was duly appointed chief of police following a civil service examination and continued to act as such for about one and one-half years when the village officials refused to recognize him as such and refused to pay any further compensation. The appointment of the petitioner was made under the Civil Service Law and was for an indefinite period and he could not, therefore, be summarily dismissed nor could he be dismissed on the theory that his appointment was for a definite period which had expired.

The fact that the village officials appointed the petitioner for one year does not overcome the Civil Service Law and section 188-a of the Village Law, which contemplate an appointment for an indefinite period, and since the petitioner was retained in office after the expiration of the probationary period, his term of office became indefinite.

Since the petitioner was improperly removed from office, he is entitled to a mandamus order reinstating him to the office of chief of police of the village of Scarsdale.

APPEAL by the defendants, Hugh White and others, from a peremptory mandamus order, entered in the office of the clerk of the county of Westchester on the 18th day of November, 1926.

*William Cravath White,* for the appellants.

*E. V. Conwell* for the respondent.

Peremptory mandamus order affirmed, with ten dollars costs and disbursements, upon the opinion of Mr. Justice MORSCHAUSER at Special Term. We are constrained so to hold, even if there be a technical lack of proof concerning the failure of the village to adopt a resolution regarding the establishment of a police department or the appointment of a chief of police. The record shows that the appellants have in effect admitted that the village had a police department which was functioning by virtue of section 188-a of the Village Law, as a reference to their petition to the Civil Service Commission will show. Further, the appellants by their answer admitted, by failing to deny, that, as alleged in the relator's petition, the village " by its properly constituted authorities, and pursuant to the power vested in them by the Village Law of the State of New York, had created a police department." In section 188-a only is there a provision for the establishment of a police department.

KELLY, P. J., MANNING, YOUNG, KAPPER and HAGARTY, JJ., concur.

The following is the opinion of the Special Term:

MORSCHAUSER, J. This proceeding was brought by relator for an order of mandamus directing the respondents to restore and reinstate him to the position of chief of police of the village of Scarsdale.

On July 12, 1922, the relator was appointed " Chief of Police for the balance of the official year " from August 1, 1922.

The Civil Service Commission refused to approve the appointment until a civil service examination was held. Relator took and passed the examination, and on December 5, 1922, was again appointed chief of police, took and filed the oath of office and continued to act as such until June 24, 1924, when the village officials refused to recognize him as such chief of police or to allow him to discharge the duties of the office, or to pay him any further compensation.

The relator claims that his appointment was under the provisions of the Civil Service Law and was for an indefinite period, and the respondents claim that it was made under section 188 of the Village Law* and for a definite period, which has expired.

The villages of Westchester county were placed under the provisions of the Civil Service Law by the rules adopted by the Civil

___

* Since amd. by Laws of 1925, chap. 95.— [REP.

Service Commissioners of the State and by the consent and acquiescence of the village.

Section 188-a of the Village Law* provides for the organization of police departments of a village in a county adjoining a city of the first class. The village of Scarsdale is such a village, as the county of Westchester, in which it is located, adjoins the city of New York, a city of the first class. Said section provides that officers appointed pursuant thereto " shall continue in office unless suspended or dismissed," which suspension or dismissal shall be upon charges, after notice and an opportunity to be heard in the particular officer's defense.

The relator's first appointment made in July, 1922, which the Civil Service Commission failed to approve, was an attempt on the part of the respondents to disregard the rules of the Civil Service Commission, and to make an appointment pursuant to section 188 of the Village Law, in the unclassified service for a fixed period. The Civil Service Commission would not permit this. The respondents then authorized the Civil Service Commission to publish a notice of examination for the position under the civil service rules. This notice plainly indicated that an appointment for an indefinite period as authorized by section 188-a was contemplated. It stated that the salary was $2,000, meaning of course per year. The notice also stated that " Candidates must have held supervisory positions in police departments of the size mentioned above or larger for at least five years." It also stated that it was " Open to residents of New York State." If an appointment for a fraction of a year was intended why name a salary $2,000? Why not say so much per month?

The notice nowhere stated that the term of office was limited. It cannot be conceived from the wording of this notice that it was intended to make an appointment for a limited term. If such interpretation could be placed thereon what inducement would there be for any man of the five years' experience required to come from any other part of the State and take such a position for a short term?

A man passing such an examination was entitled to the permanent appointment provided for in section 188-a, above quoted, and provided for in rule XII of the Civil Service Commission, which reads as follows: " Every original appointment to or employment

---

* Added by Laws of 1915, chap. 479, as amd. by Laws of 1921, chap. 100; since amd. by Laws of 1923, chap. 74; repealed by Laws of 1924, chap. 494. See, also, Village Law, § 188-a *et seq.*, added by Laws of 1924, chap. 494, as amd. by Laws of 1925, chaps. 90, 91, and Laws of 1926, chaps. 339, 341, 523, 524, 717; *People ex rel. Hunt* v. *Hall* (220 App. Div. 152); Const. art. 12, as amd. in 1923.— [REP.

in any position in the classified service shall be for a probationary term of three months, and an appointing or nominating officer in notifying a person certified to him for appointment or employment shall specify the same for a probationary term only; and if the conduct, capacity and fitness of the probationer are satisfactory to the appointing officer, his retention in the service after the end of such term shall be equivalent to his permanent appointment."

It is true that the respondents after the expiration of the probationary appointment went through the form of making another appointment in March, 1923, for the ensuing official year. The resolution making this appointment named the entire force, composed of a chief, a lieutenant, a sergeant and seven patrolmen. So far as relator was concerned such resolution was mere surplusage. He had served his probationary period acceptably and his retention in office under rule XII of the Civil Service Commission entitled him to hold his position. The resolution and no action taken by the respondents at any time indicates that they were acting pursuant to section 188 of the Village Law, and the publication of the notice of examination clearly indicates that an employment for an indefinite period was contemplated.

The relator having successfully passed an examination for a position in the civil service for an indefinite period and having received his appointment for the probationary period and having thereafter been retained in the service and having given up his former residence and position, was entitled to the position which he was induced to accept. An attempt to terminate his appointment by going through the form of an appointment for a period of three months is only a method of removing him without cause. That the removal was without cause is evidenced by the report of the police investigating committee of the board of trustees of the respondents, commending relator for a substantial improvement in the police department and acquitting him of alleged misconduct.

It is the policy of the State that appointments and promotions in the civil service shall be made according to merit and fitness. (Const. art. 5, § 9; *People ex rel. McClelland* v. *Roberts,* 148 N. Y. 360, 366.) And that after appointments are made officials shall not be removed from office " except for reasons stated in writing " and upon " charges preferred against him [them], and shall be allowed a reasonable time for answering the same in writing." (Civil Service Law, § 22, as amd. by Laws of 1920, chap. 833, and Laws of 1924, chap. 612; " Municipal Corporations," 28 Cyc. 444; *People ex rel. Tate* v. *Dalton,* 158 N. Y. 204; *People ex rel. Strahan* v. *Feitner,* 49 App. Div. 101; *Waters* v. *City of New York,* 43 Misc. 154.)

There is no provision in the civil service that it is more essential that these provisions should be carried out than in the police department. Competent, experienced and fit police are a great essential for the preservation of peace and good order, life and property. Especially so in a community like Scarsdale, adjoining the greatest city in the world, with all its host of criminals and lawbreakers of all kinds. There is no community where a competent police force is more essential. Such a force cannot be maintained unless the laws relating to permanence of position are enforced. Competent men will not take positions from which they can be ousted without cause upon a short notice.

The Civil Service Law was enacted for the very purpose of preventing the removal of competent and honest officials for political or other unworthy reasons. The due enforcement of that law is necessary not only to protect officials in their positions, but to preserve the morale and efficiency of the service.

The courts have power to grant mandamus to reinstate persons improperly removed from office. (*People ex rel. Koch* v. *Odell*, 44 App. Div. 630; affd., 162 N. Y. 613; "Municipal Corporations," 28 Cyc. 447; *People ex rel. Blair* v. *Grout*, 44 Misc. 526.)

The relator is entitled to an order of mandamus against the respondents, commanding them to reinstate the relator to the office of chief of police of the village of Scarsdale, and to the perquisites of that office, with costs.